CITY OF MIAMI, A MUNICIPAL CORPORATION, *Plaintiff in Error*, v. FLORIDA EAST COAST RAILWAY COMPANY, A CORPORATION, *Defendant in Error.*

THE FLORIDA EAST COAST RAILWAY COMPANY, A CORPORATION, *Plaintiff in Error*, v. THE CITY OF MIAMI, A MUNICIPAL CORPORATION, *Defendant in Error.*

Opinion Filed April 21, 1920.

1. A common law dedication is the setting apart of land for public use, and to constitute it, there must be an intention

by the owner, clearly indicated by his words or acts, to dedicate the land to public use, and an acceptance by the public of the dedication. An offer to dedicate land to public use may be, revoked by the owner at any time before it has been accepted by the public.

2.  The platting of land and the sale of lots pursuant thereto creates as between the grantor and the purchasers of the lots, a private right to have the space marked upon the plat as streets, alleys, parks, etc., remain open for ingress and egress and the uses indicated by the designation, but so far as the public is concerned such acts amount to a mere offer of dedication which must be accepted before there is a revocation to complete the dedication.

3.  To constitute a dedication at common law there must be an intention on the part of the proprietor of the land to dedicate the same to public use; there must be an acceptance by the public; and the proof of these facts must be clear, satisfactory and unequivocal.

4.  The burden of proving acceptance of an offer to the public to dedicate lands for streets, alleys and parks is upon the county or municipality asserting it.

5.  A common law plat has no effect as a conveyance, and an offer to dedicate thereby created may be revoked by the owner or his grantee at any time before acceptance by the public.

6.  Where a common law offer of dedication has been made and has not been accepted by or for the public, a conveyance before acceptance of the property so offered may constitute a revocation as to the public of the offer to dedicate.

7.  Where a plat is recorded showing the dedication of land in a city bordering on a bay for a park, the dedicators reserving all riparian rights adjacent to the land, and before the acceptance of the dedication by the public, the dedicators convey the land with riparian rights to a railroad company,

which company constructs some of its operating facilities on portions of the land and actually occupies and uses for rail-road purposes such portions for years before acceptance of any nature of the dedicated land for park purposes by or for the public, the municipality can not recover from the company the portions of the land so occupied and used by the company or the lands covered by the reserved riparian rights below high water mark at the time of the filing of the dedication plat.

A Writ of Error to the Circuit Court for Dade County; H. Pierre Branning, Judge.

Judgment reversed on defendant company's writ of error.

*A. J. Rose,* for City of Miami;

*Armstead Brown, A. V. S. Smith, Shutts, Smith & Bowen* and *Scott M. Loftin,* for Florida East Coast Railway Company.

WHITFIELD, J.—The declaration filed herein is as follows:

"City of Miami, a corporation, by Hudson, Wolfe & Cason and Price & Eyles, its attorneys, sues Florida East Coast Railway Company, a corporation, in an action of ejectment, because the defendant is in possession of a certain tract or parcel of land, situate, lying and being in Dade County, Florida, described as follows, to-wit:

"Beginning at a point in the corporate limits of the City of Miami, Florida, where the center line of Third Street, if extended Easterly across the Boulevard in the City of Miami would intersect the East boundary line

of said Boulevard; thence run East along a continuation of said center line of Third Street to the low water mark of Biscayne Bay; thence meander the low water mark of Biscayne Bay in a Southerly direction to the Northern boundary line of what is known as the Terminal Dock; thence meander the low water mark of Biscayne Bay eastward, along the Northern boundary of said Terminal Dock to the Northeast corner thereof; thence follow the low water mark of Biscayne Bay from the Northeast corner of said Terminal Dock to the Southeast corner thereof; thence meander the low water mark of Biscayne Bay West along the Southern Boundary of said Terminal Dock to the low water mark on the shore; thence in a Southerly direction along the low water mark of Biscayne Bay to a point where the center line of Seventh Street, if extended East would intersect same; thence West along said center line of Seventh Street as extended as aforesaid, to the East boundary line of the Boulevard, in the City of Miami; thence north along the East boundary line of said Boulevard to the place of beginning; said land being otherwise described as follows:

"All that lot, tract, or parcel of land lying, being and situate in the City of Miami, Dade County, Florida, bounded on the West by the Boulevard in said City; bounded on the North by an extension of the center line of Third Street from the East boundary of the Boulevard to the low water mark of Biscayne Bay; bounded on the East by the low water mark of Biscayne Bay, and bounded on the South by an extension of the center line of Seventh Street from the Eastern boundary of the Boulevard to the low water mark of said Bay; containing about five (5) acres of land, together with all riparian rights incident and appurtenant thereto; to which plaintiff claims title, and the defendant has received the profits of

said lands since the 9th day of May, 1905, of the yearly
value of Three Thousand Dollars ($3,000.00) and refuses
to deliver possession of said land to the plaintiff, or to
pay it the profits thereof." A plea of not guilty was filed.
At the trial the words "together with all riparian rights
incident and appurtenant thereto" were by agreement
stricken from the declaration. After all the evidence had
been adduced, the following verdict and judgment thereon
were directed, rendered and entered by the court:

"We, the jury, find for the plaintiff and that the plain-
tiff, the City of Miami, is the owner of an easement for
park purposes, and has a right of possession upon and
over the following described property, to-wit:

"Beginning at the point where the center line of Third
Street, if projected Eastward to the Bay, would inter-
sect the Eastern boundary line of Biscayne Ave., com-
monly called the Boulevard, in the city of Miami, Florida;
thence East along the center of Third Street; if project-
ed as aforesaid, to the waters of Biscayne Bay; thence
meander the waters of Biscayne Bay Southward to the
Northern boundary line of the present Terminal Dock
of the Florida East Coast Ry. Company; thence West-
ward along the North line of said Terminal Dock pro-
duced Westwardly to a point fifty feet East of the East-
ern boundary line of Biscayne Ave., commonly called
Boulevard; thence Southward along a line parallel with
and fifty feet distant from the Eastern boundary line
of the Boulevard, to the Southern boundary line of the
present Terminal Dock of the Florida East Coast Rail-
way Co., produced Westwardly; thence Eastward along
an extension of the Southern boundary line of said Ter-
minal Dock of the defendant company to the waters of
Biscayne Bay; thence meander the waters of Biscayne

Bay Southward to the point where the center line of
Seventh Street, if projected Eastwardly, would intersect
the water line of Biscayne Bay; thence West along such
extension of the center line of Seventh Street, to the East-
ern Boundary line of Biscayne Ave., commonly called
Boulevard; thence Northward along the Eastern boun-
dary line of said Biscayne Ave., commonly called Boule
vard to the place of beginning.

"We also find that the above easement of the city of
Miami in the land above described is subject to an ease-
ment for the purposes of ingress and egress One Hun-
dred Seven and one-half (107½) feet wide, North and
South, as at present located, and occupied by the rail-
road tracks of the defendant company, as they now enter
and cross Bay Park, and the Boulevard.

"And we further find that the above easement of the
city in the lands heretofore described, is subject to a
right of way of the defendant 16 feet wide North and
South, from the East line of the Boulevard to the West
line of the Terminal Dock, and lying parallel with and
immediately South of the North line of the Terminal
Dock, produced Westwardly, across Bay Park.

"We further find that the Boulevard or Biscayne Ave.,
lying West of the Park strip in question, is fifty (50)
feet wide.

"We furthermore find that the plaintiff is entitled to
no Dollars ($.0) Damages.

"We also find that the defendant is entitled to the Ter-
minal Dock, and the fill on which same is constructed
as now built and established, lying between Bay Park
and the waters of Biscayne Bay, the same being 704 feet
long North and South.

"We furthermore find that the plaintiff is entitled to recover of and from the defendant, all costs of court herein expended.

"So say we all.

A. V. Brown, Foreman.

"IT IS THEREUPON ORDERED AND ADJUDGED that the plaintiff, the said City of Miami, do have and recover from the defendant, the Florida East Coast Railway Company, an easement for Park purposes and possession of the following described property, to-wit:

"Beginning at the point where the center line of Third Street, if projected Eastward to the Bay, would intersect the Eastern Boundary line of Biscayne Ave., commonly called the Boulevard, in the City of Miami, Florida; thence East along the center of Third Street, if projected as aforesaid to the waters of Biscayne Bay; thence meander the waters of Biscayne Bay Southward to the Northern Boundary line of the Present Terminal Dock of the Florida East Coast Ry. Company; thence West ward along the North line of said Terminal Dock produced Westwardly to a point fifty feet East of the Eastern boundary line of Biscayne Ave., commonly called Boulevard; thence Southward along a line parallel with and fifty feet distant from the Eastern boundary line of the boulevard, to the Southern boundary line of the present Terminal Dock of the Florida East Coast Railway Co., produced Westwardly; thence Eastward along an extension of the Southern boundary line of said Terminal Dock of the defendant company to the waters of Biscayne Bay; thence meander the waters of Biscayne Bay Southward to the point where the center line of Seventh Street, if projected Eastwardly, would intersect the wa-

ter line of Biscayne Bay; thence West along such extension of the Center line of Seventh Street, to the Eastern boundary line of Biscayne Ave., commonly called Boulevard; thence Northward along the Eastern Boundary line of said Biscayne Ave., commonly called Boulevard, to the place of beginning; subject, however, to an easement in favor of the railway company for the purpose of ingress and egress 107½ feet north and south as at present located and occupied by the railway tracks of the defendant company as they now enter and cross Bay Park and the Boulevard; and also subject to an easement for right of way purposes in favor of the defendant sixteen feet wide, north and South, from the east line of the Boulevard to the west line of the Terminal Dock and lying parallel with and immediately south of the north line of the Terminal Dock produced westwardly across Bay Park.

"IT IS FURTHER ORDERED AND ADJUDGED that the Boulevard or Biscayne Avenue, lying West of the park strip abose described. is fifty feet wide.

"IT IS FURTHER ORDERED AND ADJUDGED that the plaintiff, the city of Miami, do have and recover of and from the defendant, Florida East Coast Railway Company, all costs of court in this behalf expended, which said costs are here taxed and assessed in the sum of Thirty and 92/100 Dollars.

"DONE AND ORDERED on the 5th day of October, A. D. 1916."

Each party made a motion for a new trial, both motions being denied and exceptions noted.

A writ of error was taken by each party and by agreement one transcript of the record covers the two writs of error and the assignments of error thereon.

The purpose of the action is to recover an easement for public park purposes in a strip of land lying between Biscayne Bay and a street called Biscayne Drive or Boulevard in the City of Miami, the strip extending north and south between designated points opposite the center of 3rd and 7th streets.

The contention of the plaintiff below on its writ of error is comprehensively stated in its 67th assignment of error that "the court erred in not directing a verdict for the plaintiff and against the defendant for the property described in the declaration free from any easement claimed by the defendant and free from any right-of-way claimed by the defendant."

The contentions of the defendant below on its writ of error are, in substance, that the court erred in adjudging an easement for public park purposes in any portion of the described land, and in locating the eastern line of the adjudged dedicated easement for public park purposes. Apparently the defendant does not claim any private rights in the 16-foot right-of-way across the strip, adjudged in favor of the defendant.

It appears that a plat inscribed "Map of Miami, Dade Co., Fla., covering lands "surveyed by A. L. Knowlton, C. E., assisted by J. S. Frederick, C. E., and L. R. Ord, C. E., June 9, 1896," was filed in the office of the Clerk of the Circuit Court for Dade County, August 8, 1896, and re-filed September 3, 1896.

"The plat exhibits, among other things, many blocks divided into lots with streets running east and west numbered from one to twenty-seven, and avenues running north and south lettered from A to M. The plat represents Bay Biscayne as lying on the east, and all of the

streets numbered from one to fourteen open into an ave-
nue or street called Biscayne Drive, which runs nearly
parallel with the shores of the Bay. The plat represents
a narrow strip of land varying in width as lying between
Biscayne Drive and the Bay. The strip of land between
Biscayne Drive and the Bay is divided into small lots
or parcels by lines drawn across it various places, but
the lots are not numbered or designated in any manner
except those extending from a line drawn across the strip
opposite the center of 3rd street, to a similar line drawn
across it opposite the center of 7th street, which is marked
in large letters P A R K. Upon the plat filed with the
clerk is a written statement as follows: 'Know all men
by these presents that we (naming the parties) have
caused to be made the foregoing attached map of (de-
scribing certain lands) lying and being in Dade County,
State of Florida, to be known as Miami; and that we do
hereby dedicate to the perpetual use of the public the
streets or highways shown thereon, reserving to our-
selves, our heirs, successors, personal representatives or
assigns owning lands abutting or adjoining the same, the
reversion or reversions thereof whenever discontinued by
law; also reserving that certain strip of land which lies
on the easterly side or Biscayne Bay Drive, between
said Drive and the shore of Bay Biscayne, including in
said reservation all riparian rights adjacent to said strip,
which extends from 14th street to the northern limit of
plat; also reserving such a strip of land with riparian
rights, as are shown by the above plat to lie between the
Miami river and the streets running parallel thereto. Wit-
ness our hands and seals this 1st day of July, A. D.
1896.'" Florida East Coast R. Co. v. Worley, 49 Fla.
297, 38 South. Rep. 618.

A common law dedication is the setting apart of land for public use, and to constitute it, there must be an intention by the owner, clearly indicated by his words or acts, to dedicate the land to public use, and an acceptance by the public of the dedication. An offer to dedicate land to public use may be revoked by the owner at any time before it has been accepted by the public. People *ex rel.* Howland v. Dreher, 101 Cal. 271, 35 Pac. Rep. 867. The dedicator of lands for public easements may reserve all private riparian rights that are appurtenant to the land. 18 C. J. 70; Gilbert v. Eldridge, 47 Minn. 210, 49 N. W. Rep. 679, 13 L. R. A. 411; People *ex rel.* Burnham v. Jones, 112 N. Y. 597, text 606, 20 N. E. Rep. 577. No reservation of riparian rights appears in Ruge v. Apalachicola Oyster Canning & Fish Co., 25 Fla. 656, 6 South. Rep. 489.

The platting of land and the sale of lots pursuant thereto creates as between the grantor and the purchasers of the lots a private right to have the space marked upon the plat as streets, alleys, parks, etc., remain open for ingress and egress and the uses indicated by the designation, but that so far as the public is concerned such acts amount to a mere offer of dedication which must be accepted before there is a revocation to complete the dedication. To constitute a dedication at common law there must be an intention on the part of the proprietor of the land to dedicate the same to public use; there must be an acceptance by the public; and the proof of these facts must be clear, satisfactory and unequivocal. One who makes a plat of his land showing strips of land for streets and alleys and places for public parks, and who causes the plat to be recorded in the public records of the county where the land lies, and who offers lots for sale according to such map or plat, thereby making a tender to the

public of such strip and parcels of land indicated on the plat as streets, alleys and parks for such purpose, and before the public accepts such offer he may revoke the same. Acceptance of such an offer of dedication may be by formal resolution of the proper authorities or by public user. The burden of proving acceptance of an offer to the public to dedicate lands for streets, alleys and parks is upon the county or municipality asserting it. Kirkland v. City of Tampa, 75 Fla. 271, 78 South. Rep. 17; Smith v. Horn, 70 Fla. 484, 70 South. Rep. 435. No dedication is complete until acceptance by the public. 3 Dill. Mun. Corp. (5th ed.) Sec. 1086.

"Decisions recognize a *clearly defined distinction* between the rights acquired by the *public* through dedication effected by platting and sale, and the *private rights* acquired by the grantees by virtue of the grant or covenant contained in a deed which refers to a plat, or bounds the property upon a street through the grantor's lands. These decisions adopt the view that where lands are platted and sales are made with reference to the plat, the acts of the owner in themselves merely create private rights in the grantees entitling the grantees to the use of the streets and ways laid down on the plat or referred to in the conveyance. But these rights are purely in the nature of private rights founded upon a grant or covenant, and no public rights attach to such streets or lands until there has been an express or implied acceptance of the dedication, evidenced either by general public user, or by the acts of the public authorities. In this view, the making of the plat and the sale of lands with reference thereto are merely evidence of an intent to dedicate, which, like every other common law dedication, to be made complete and carried into effect so as to create

public rights, must be accepted and acted upon by the public." 3 Dill. Mun. Corp., pp. 1739, 1740.

A common law plat has no effect as a conveyance, and an offer to dedicate thereby created may be revoked by the owner or his grantee at any time before acceptance by the public. After a common law dedication is once accepted by the public it is irrevocable except with the consent of the public and of those persons who have vested rights in such dedication. The acceptance of a common law dedication need not immediately follow the offer to dedicate, but must be within a reasonable time and before withdrawal by the offerer. What constitutes a revocation of an offer to dedicate depends very largely upon the circumstances and is usually a question of fact, and it may be shown by acts inconsistent with the public use to which the land is offered to be dedicated, as by conveyance of the property, or by enclosing the land so as to exclude the public use, or by erecting buildings on the land offered to be dedicated as a street. Rose v. Village of Elizabethtown, 275 Ill. 167, 114 N. E. Rep. 14; 18 C. J. 72, 78 and 120; 4 McQuillin Mun. Corp., p. 3269; Lightcap v. Town of North Judson, 154 Ind. 43, 55 N. E. Rep. 952; People v. Reed, 81 Cal. 70, 22 Pac. Rep. 474; City of Eureka v. Croghan, 81 Cal. 524, 22 Pac. Rep. 693.

The general rule seems to be that the platting of land and the sale of lots pursuant thereto constitute a dedication, if it may be so called, of the public places delineated upon the plat only as between the grantor and purchaser, and that, so far as the municipality is concerned, such acts amount to a mere offer of dedication, and there is no complete dedication without an aceptance of some kind by the municipality. 4 McQuillin Mun. Corp., p. 3271.

Where a common law offer of dedication has been made and has not been accepted by or for the public, a conveyance before acceptance of the property so offered may constitute a revocation as to the public of the offer to dedicate. 18 C. J. 122; City of Chicago v. Drexel, 141 Ill. 89, 30 N. E. Rep. 774; Trine v. City of Pueblo, 21 Col. 102, 39 Pac. Rep. 330.

The easement in controversy is for a park and not for a street. The plaintiff is the city representing the public, not abutting or adjacent property owners who bought lots with reference to a plat showing a dedicated park. The defendant has all the rights of the dedicators and contends that there was no effective dedication of the *locus in quo* as a park, and in effect that the plat was a mere "ambiguous" and "inconsistent" proffer of dedication with no user or acceptance of it by the public or by the city. Public rights in a dedicated easement are dependent upon an acceptance of the dedication expressly or impliedly by user, or otherwise. The mere purchase by individuals of lots with reference to the recorded plat showing a dedication for a park is not an acceptance of the dedication for the city or for the public. Kirkland v. City of Tampa, 75 Fla. 271. 78 South. Rep. 17. But an acceptance of a dedication of a park by or for the public is not essential to give private rights to purchasers of lots who buy with reference to the dedicating plat which shows a dedicated park. Florida E. C. R. Co. v. Worley, 49 Fla. 297, 38 South. Rep. 618. The private rights of individuals are subject to the exercise of legal authority over the public easement. Price v. Stratton, 45 Fla. 535, 33 South. Rep. 644. This court has held that the dedication was "ambiguous" and that there is "an apparent inconsistency between the different parts of the plat" in so far as the plat in effect purports to dedi-

cate the *locus in quo* as a park. This inconsistency and ambiguity were caused by placing the word "PARK" between two lines drawn across a long strip of land lying between a street and a bay as shown by the dedication plat and by a conflicting express reservation contained in the plat *specifically covering the strip* of land on which the word "PARK" appears and also "including in said reservation all riparian rights adjacent to said strip." The court decided that the *locus in quo* was dedicated to be a public park as to those who bought lots with reference to the plat showing the word "PARK" on the strip; but that "all riparian rights incident or appurtenant to the entire strip are reserved from dedication and constitute private property." Florida East Coast R. Co. v. Worley, 49 Fla. 297, 38 South. Rep. 618. This is the law of the case as between the parties thereto and the controverted questions decided. The dedication for park purposes covered only the strip of land between Biscayne Drive or Boulevard and the high water mark of Biscayne Bay at the date of the dedication, extending between lines drawn east from the center of Third and Seventh streets. "All riparian rights adjacent to said strip" were expressly "reserved from dedication and constitute private property." Florida East Coast R. Co. v. Worley, 49 Fla. 297, text 311. 38 South. Rep. 618; Panama Ice & Fish Co. v. Atlanta & St. A. B. R. Co., 71 Fla. 419, 71 South. Rep. 608. Riparian rights include common law rights as well as such as may be conferred by statute. The common law riparian rights include accretions, etc. Ferry Pass Inspectors' & Shippers' Ass'n. v. Whites River Inspectors' & Shippers' Ass'n., 57 Fla. 399, 48 South. Rep. 643; Thiesen v. Gulf, Florida & Alabama Ry. Co., 75 Fla. 28, text 64, 78 South. Rep. 491.

The rights of the public in the strip or the rights of the defendant in the 107½ feet across the strip for its railroad tracks, etc., or in the portion of the strip, if any, covered by the defendant's warehouses and docks, were not considered or determined in the Worley case, above cited. The public were not represented in that suit.

In this action the city is entitled to recover for the public use, an easement in the strip, or so much and such portions thereof as had not as to the public rights therein been lost by revocation of the offer of dedication or otherwise *before* there was any acceptance or user thereof by or for the public as a public park. Acceptance or user for public park purposes, *after* the dedication rights of the public had been lost as to the whole or any part of the strip in controversy, is immaterial to the issues here involved. See City of Chicago v. Drexel, 141 Ill. 80, 30 N. E. Rep. 774.

The defendant in effect claims that if it is held to be not entitled to the possession of the entire premises, because of the decision in the Worley case, or on the facts in this case, yet it is entitled to a right of way 107½ feet wide across the strip now used for its railway tracks and other approaches to its warehouses and docks that are located on the eastern side of the strip in controversy, and also that the eastern boundary of the easement is high water mark at the time of dedication.

The dedication plat was filed in August, 1896, and the defendant company subsequently acquired the rights of the dedicators. In 1897 and 1898 the defendants constructed in part at least its present warehouses and docks on the east side of the strip and laid its tracks across the strip which have been used ever since by the defendant for its transportation purposes. This was done long be-

fore any acceptance expressly or impliedly by user or otherwise by the public, or by the city. or other public authorities of the strip for public park purposes. Subsequent to this the property was assessed to the defendant by the city and for some years taxes were paid thereon by the defendant to the city.

Acquiescence of the City Council in the erection of warehouses, docks and railroad tracks by the defendant on portions of the strip, was evidenced by an ordinance approved August 26, 1897, authorizing the defendant company to use stated streets for its tracks, including the right to cross Biscayne Bay Drive to reach the waters of Biscayne Bay where the company's docks, etc., were then being constructed on the eastern side of the strip in controversy. The purpose of the ordinance indicated a knowledge that. the strip would be so crossed by the tracks of the defendant's railroad to reach the defendant's warehouses and docks on the waters of Biscayne Bay, and showed an acquiescence therein. As late as 1903 the City Council of the City of Miami adopted a resolution by which it expressly assumed to decline to accept the dedication of the strip for park purposes, it not having been theretofore expressly accepted or perhaps noticeably used for public park purposes. An ordinance of 1905 expressly attempted to give a right to the defendant to cross the strip with its railroad tracks.

If by a conveyance of the strip to the defendant before an acceptance of its proffered dedication by user or otherwise, the dedictor did not in effect revoke the proffered dedication as to the public, yet in erecting its warehouses and docks on the east side of the strip and in constructing its tracks across the strip to reach its warehouses and docks under the circumstances shown in

the record, with the acquiescence of the City Council and the apparent acquiescence of the public, the defendant company, having the rights of the dedicator, may be regarded as having revoked as to the public the "ambiguous" and "inconsistent" dedication of the strip as a park, *in so far as the defendant,* before any user or acceptance of the dedication, *took actual possession of specific portions of it* with the acquiescence of the City Council, for its warehouses and docks and right-of-way. Even if the principles of repose and estoppel do not in general apply to the public, yet a proffered dedication of a park may as to the public be revoked before its acceptance; and the public then acquies no rights therein. A revocation of a proffered dedication of a park does not destroy the private rights of owners of lots who had already bought with reference to a plat showing the dedicated park; though such private rights would be subject to a proper application of the rules of repose and estoppel as well as of the police power. Even if prior to 1898 persons crossed the strip at different points in going to and from the waters of Biscayne Bay and fished and bathed in the waters adjacent to the strip and otherwise utilized the strip in a casual or desultory way, this does not under the circumstances shown, constitute a user of the strip for public park purposes, so as to operate as an acceptance by the public of the proffered dedication for a public park before the tile to the strip was conveyed by the dedicator to the defendant, who with the rights of the dedicator and with the consent of the city authorities actually occupied portions of the strip for purposes that were and are inconsistent with the use of such portions of the strip for public park purposes. This actual occupancy by the grantee of the dedicator before acceptance of the proffered dedication, under the special circum-

stances shown in this case, operated as a revocation of the proffered dedication as to the portions of the strip so occupied. If the City Council had no authority to vacate portions of the strip or to grant rights of way over it after its acceptance by or for the public, this did not preclude the City Council from declining to accept the proposed dedication or before acceptance from acquiescing in the occupancy of portions of the strip by the grantee of the dedicator for purposes inconsistent with the dedication, which occupancy before any acceptance by or for the public revoked the proffered dedication *pro tanto*. The defendant is not a stranger to the dedicator's title and rights, and a trespasser upon the rights of the public; but the defendant had all the rights of the dedicator and had actually occupied portions of the strip with the acquiescence of the City Council and apparently of the public long before there was any recognition of or acceptance of the proffered dedication for public park purposes by or for the city in any way whatsoever.

While the city and the public were entitled to a reasonable time within which to accept the proffered dedication of the strip for public park purposes, the length of time that would be reasonable depended on circumstances. As portions of the strip were sought to be actually occupied by the grantee of the title thereto from the dedicator, and as such occupancy and user for other purposes by one having the title thereto from the dedicator, if taken before acceptance of the dedication by or for the public, would operate in law as a revocation of the proffered dedication as to the public rights therein, a failure of the public and the city to accept or to use the proffered strip for public park purposes, before its occupation and permanent user by the defendant

for other purposes, served to curtail the time within which acceptance should reasonably have been made; and this lessening of time was a result of the inaction of the public and of the city authorities in failing to accept the proffered dedication and of the action of the City Council in acquiescing in the desired occupancy by the defendant when they could have accepted the proffered dedication and perfected rights of the public in the use of the entire strip between 3rd and 7th streets for public park purposes under the dedicated plat.

In the Demopolis, Alabama, case, so confidently relied on by counsel for the city, the unambiguous dedication was of a *STREET* that extended to low water mark on a navigable river. The dedication had been accepted *by statute* and the defendant bought lots abutting on the street that were conveyed to him with express reference to the completely dedicated street. The unauthorized occupancy of the street was long after its statutory acceptance and with full knowledge of the public easement impresed upon the locus. Webb v. City of Demopolis, 95 Ala. 116, 13 South. Rep. 289, 21 L. R. A. 62; City of Demopolis v. Webb, 87 Ala. 659, 6 South. Rep. 408.

In this case the dedication is for a public park and the dedication plat has been adjudged to be "ambiguous" and "inconsistent." The defendant had all the rights of the dedicator under a conveyance of the *locus in quo* made before any acceptance by or for the public or the "ambiguous" dedication, and the defendant had for years actually occupied and improved by expensive structures, portions of the locus with the acquiescence of the city council before any acceptance of any kind of the dedication by or for the municipality or the public.

As it appears that since the laying of the railroad tracks across a portion of the strip, and since the construction of the warehouses and docks, which latter may be on a portion of the strip, (all of which was done by the defendant having the rights of the dedicator, with the acquiescence of the city council, and before any user of the strip for public park purposes and before there was any acceptance of the dedication by or for the public), there have been some acts of recognition and acceptance by the city and the public, of the public rights in the strip by virtue of the dedication; and as there appears to have been no sufficient actual possession of the dedicated strip by the defendant company to operate as a revocation of the dedication before there were some acts of acceptance or user of the dedicated strip by or for the public, except of that portion thereof towards the southern end of the strip that is covered by the defendant's railroad tracks and right of way across the strip, and of that portion of the east side of the strip, if any, occupied by portions of the defendant's warehouses and docks, the city acting for the public may recover an easement in such portions of the strip as were not held in actual possession by the defendant having the rights of the dedicator before there was an aceptance by or for the public of the dedication for public park purposes.

In the dedication plat showing the word PARK upon the strip of land the dedicators expressly reserved "all riparian rights adjacent to said strip." This limited the easement for public park purposes on the eastern or Biscayne Bay side of the strip, to a line just above high water mark at the date of the filing of the dedication plat. The public easement did not and does not include accretions or other riparian rights that were expressly reserved to the dedicators.

The location of the line of the high water mark at the date of the filing of the dedication plat, if controverted, is a fact to be determined in due course of procedure.   If the warehouses and docks are located below or east of the line of high water mark at the date the plat was filed, the easement in the strip for public park purposes may not be unlawfully impaired or affected by such structures.

The verdict and judgment do not confine the eastern boundary of the public easement to a line just above the high water mark of Biscayne Bay at the date of the filing of the dedication plat; and the verdict and judgment accord to the defendant company a right of way 16 feet wide towards the within part of the strip as to which latter the defendant makes no claim.

For these errors, the judgment is reversed on the defendant company's writ of error and the cause remanded for further proceedings consistent with this opinion.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.