87 So.2d 97 (1956)
Fred D. BURNHAM, Jr., and Hal K. Leggitt, Appellants,
v.
DAVIS ISLANDS, Incorporated, a Corporation, et al., Appellees.
Supreme Court of Florida. Special Division B.
March 16, 1956.
Rehearing Denied May 22, 1956.
*98 Hall, Farnsworth & Rousseau, Tampa, for appellants.
Reeves, Allen & Dell and Gibbons & Gibbons, Tampa, for appellees.
Paul Game, Tampa, for Davis Islands Civic Association, amicus curiae.
O'CONNELL, Justice.
The appellants, Fred D. Burnham, Jr., and Hal K. Leggitt, instituted the litigation which gives rise to this appeal, seeking to enjoin the subdivision and sale of a portion of Davis Islands, in Tampa Bay, by the owners, appellees Davis Islands, Inc., Byars-Thompson, Inc., Alfred Dana and Bernice Dana, his wife.
The property in question is that upon which Davis Islands, Inc., one of the original developers of Davis Islands subdivision, operated a golf course for many years, from the time of its construction shortly after the land was pumped from the bay in the 1920's until December 31, 1954. The record relied upon to establish the factual background in this case exceeds 1,000 pages, but in general outline the situation reflected is this:
From the inception of the venture it was widely publicized as offering many attractions to prospective home owners. Various advertisements and brochures pointed to the ready accessibility of recreational facilities for water sports, tennis, as well as golf, in surroundings of great beauty and permanent values. Sales were made prior to completion of the dredging operations, and apparently before any plats were recorded. The subdivision was comprised of several sections, each covered by a separate plat. The plats covering the particular sections and area here involved were placed of record in 1925, and upon each record plat covering this area the particular blocks in question appeared simply as open spaces marked "Reserved  See Margin." The marginal notation was as follows:
"The owner contemplates that the blocks, marked `Reserved  See Margin' may become a part of a golf course, but the owner expressly reserves the absolute right to prescribe the term of any dedication hereafter made or to subdivide or dispose of the same in such manner as it may determine."
According to testimony of appellants themselves, the section containing the golf course was not developed to any extent until after 1951. The appellant Burnham first purchased lots in the subdivision in 1952, and Leggitt in 1954. Burnham had been familiar for several years, by virtue of his operations as a real estate broker, with the general promotional work of the Island developers, drawing attention to all the assets of the subdivision, including the golf course. But there is no testimony in the record, either from him or any other purchaser *99 appearing as a witness, that lots were purchased in reliance upon the widespread promotional campaign or literature accompanying the initial opening of the subdivision. There is likewise no evidence from any parties purchasing from appellees that they relied upon representations emanating from Davis Islands, Inc., or successors, to the effect that the golf course would be permanent. The appellant Burnham, in fact, stated that he had heard rumors as early as 1950 concerning the possible subdivision of the golf course, prior to the time he purchased any lots, located near the golf course or elsewhere, but nevertheless made no inquiry at the time of his purchases.
On April 29, 1955, appellees placed of record a plat showing the proposed division of the area, and construction of residences thereon has since begun. The appellants brought this suit as a class action on behalf of "all persons in like situation" who have purchased lots on the Islands, either facing the streets surrounding the blocks in question, or so located in the subdivision as to have been influenced by the existence of the golf course in the area. The scope of relief sought is limited, in the language of appellants, as follows:
"There is no attempt either in argument or pleadings or evidence to require the appellees to operate a golf course. The only relief sought is to prevent the subdividers from destroying the easement and right of the purchasers of property on the island to have the area remain in its present status impressed with an easement for their benefit consisting of all the incidents appurtenant thereto including light, air, view, trees, and a right to have the land available for a golf course."
The main issues presented by appellant for determination upon this appeal are, first, "whether there was a public dedication of the golf course"; second, "whether the actions of the developers estopped them from claiming that the golf course was not dedicated to the owners of the subdivision"; and third, "whether the offers of the developers as put forth in their public advertising and sales promotion when accepted by purchasers of lots created a contract between such developers and the purchasers that the golf course would be for the use and benefit of the subdivision and the purchasers."
It was the opinion of the court below upon the first question that the evidence would not sustain a finding of public dedication on any theory:
"There is no conflict in the testimony but that the several owners of the Islands maintained and operated the golf course as a business venture for profit, the use of the course being made available to the public upon the payment of a `green fee.' * * * This golf course was always in the possession of the owners and under their control and maintenance; neither the City of Tampa nor anyone else on the part of the public, either took or attempted to take possession thereof. At all times the City of Tampa levied taxes against the properties, recognizing the private ownership, and which tax was paid by the respective owners. * * * all purchasers were on notice that the golf course could be used only upon payment of the fee or charge * * *. Here every act on the part of the owners shows a clear intent to retain possession and control and never was there an abandonment or surrender of the lands in question to the public. While it may not have been successful financially, it is quite clear the golf course was being operated as a business or commercial venture, with the idea of making a profit. The golf course was in no different category than any other place of amusement or attraction being held out to the public for a fee or charge."
Thus, while there is no question that an offer of dedication can be made by a plat filed for record, or by mere permissive conduct of the owner, there was not in this case, even in the absence of the marginal reservation above, the requisite surrender of the *100 area to public use. The court's ruling on this issue appears to be correctly based on the general proposition, with which the decisions in this state are in accord, that "strictly speaking, there can be no dedication to private uses, or to uses public in their nature but the enjoyment of which is restricted to a limited part of the public." 26 C.J.S., Dedication, § 8; 16 Am.Jur., Dedication, Sec. 5; Littlefield v. Hubbard, 124 Me. 299, 128 A. 285, 38 A.L.R. 1306.
The appellants, however, claim special rights accruing to them as purchasers of lots in the subdivision where the golf course was maintained, independent of any public dedication, as hereinabove stated. It is true that the rights of abutting or adjacent purchasers have been considered as flowing from a "dedication," and certainly the filing of a plat may constitute an offer to both purchasers and the general public. But the cases indicate, where the distinction becomes material, that such purchasers' rights depend, not upon a true dedication, but upon a private easement implied from sales with reference to a plat showing streets, parks, or other areas subject to their use or enjoyment. City of Miami v. Florida East Coast Ry. Co., 79 Fla. 539, 84 So. 726; McCorquodale v. Keyton, Fla., 63 So.2d 906; Powers v. Scobie, Fla., 60 So.2d 738. Such easements are vested or perfected in a grantee immediately upon conveyance to him, but it is clear that his rights are determined on the basis of principles of law applicable to private property interests as opposed to public dedications. Mumaw v. Roberson, Fla., 60 So.2d 741; Canell v. Arcola Housing Corp., Fla., 65 So.2d 849, 851.
This being the case, appellants cannot rely upon an estoppel arising from conduct of appellees allegedly indicating an intent contrary to the conveyances to appellants made by reference to plats. "Inasmuch as such an easement would be an interest in land, it could be created only in one of three ways; firstly, by express grant, that is, by a deed expressly declaring it; secondly, by implication, that is, by inferring the grant from a construction of the terms and effect of an existing deed; and thirdly, by prescription, that is to say, by a grant established by evidence clearly showing a long and continuous enjoyment and user, although no deed contains the provision. Burdine v. Sewell, 92 Fla. 375, 109 So. 648; Winthrop v. Wadsworth, Fla., 42 So.2d 541." Canell v. Arcola Housing Corp., supra. The rights of purchasers in the ordinary case of sale by reference to a plat showing public ways are created by the second means above described, that is by a grant inferred from a construction of the deed in connection with the plat to which it refers. If the terms or provisions on the face of the record plat, by reference to which appellants' conveyances were presumably made, are such as to negative any particular easement, it is difficult to see how an easement could be implied from parol representations without violating basic rules of property law and conveyancing. Estoppel may, of course, be relied upon to defeat title, but not to establish it. Cf. Hagan v. Ellis, 39 Fla. 463, 22 So. 727, and Coram v. Palmer, 63 Fla. 116, 58 So. 721.
Of controlling importance, then, is the construction to be placed upon the marginal notation quoted above, appearing upon the plats by which lots in the golf course area were conveyed. The court below was apparently of the opinion that the marginal notation expressed a reservation of rights in the grantor which would not expire or be defeated merely by permitting use of the area as a golf course thereafter without exercising the alternative right to prescribe a term for such use or make a grant by dedication for a specified period. An analysis of the language employed seems to sustain this conclusion. It is stated first, of course, that the owner contemplates that the area "may become part of a golf course." This, however, amounts to nothing more than an expression of a future possibility, not a present "dedication" to such use. In the succeeding clauses the owner makes it clear that by the marginal notation he intends to expressly reserve the absolute right, with reference to the blocks indicated, to "subdivide or dispose of the same in such manner as it may determine," *101 unless it should elect, under the alternative provision, to grant or prescribe a "dedication" for a specified term. In the latter case the owner could not, of course, dispose of the property during the term prescribed, in any manner contrary to such "dedication." From the structure of the paragraph, it does not seem susceptible of any other logical interpretation:
"Marginal Note: The Owner contemplates that the blocks marked `Reserved  See Margin' may become part of a golf course, but the owner expressly reserves the absolute right
"[1] to prescribe the term of any dedication hereafter made or
"[2] to subdivide or dispose of the same in such manner as it may determine."
The contention of appellants seems to be that by establishing and operating a golf course on the property, without prescribing a term as permitted by the first clause above, the owner estopped itself from denying that subdivision purchasers had acquired a perpetual easement in the golf course, and that it had relinquished any rights it may have had under the second reservation. Upon this theory, the only dedication or easement which could arise in favor of the abutting owners or other parties would be by permissive user, rather than by conveyance with reference to a plat. To hold that the particular use or enjoyment permitted under the circumstances of this case could give rise to a private easement as claimed would appear to be contrary to established principles of law in respect to easements generally. J.C. Vereen & Sons v. Houser, 123 Fla. 641, 167 So. 45.
There is no contention that the conduct or representations by Davis Islands, Inc., independent of the conveyances or record plats, was such as to amount to a grant of an easement, and a review of all the evidence on the issue fails to reveal any significant grounds for raising an estoppel against it to deny the easement claimed, if that issue should be material. The publicity relating to the Islands' assets, stressing permanency, related solely to the general beauty and seclusion of the area, not to the perpetual maintenance of all or any recreational facilities, and the findings of the court are fully sustained, that "every act on the part of the owners shows a clear intent to retain possession and control and never was there an abandonment or surrender of the lands in question to the public. While it may not have been successful financially, it is quite clear the golf course was being operated as a business or commercial venture."
Insofar as appellants claim that sales by the developer with reference to sales maps showing the disputed blocks as blank green areas with miniature golf players and tees, prior to recording of the plats containing the reservation, amounted to a contract or covenant that the area would always be reserved for such use, it is clear that the recording of the reservation effectively revoked any such implied offer in respect to those purchasing thereafter with reference to the record plats. City of Miami v. Florida East Coast Ry. Co., 79 Fla. 539, 84 So. 726, supra. And there is no showing in the record that any parties now interested in the land are entitled to rely upon rights which might have vested in predecessors in title purchasing prior to such revocation.
The fourth question raised by appellants relates to the trial court's refusal to accept evidence offered and then proffered by the plaintiffs in which they sought to show the alleged public nature of the golf course and that it was so treated by governmental authorities for purposes of assessing and collecting taxes. This question also relates to the alleged error of the trial court in refusing to allow testimony regarding actions and representations of real estate agents who sold lands owned by Davis Islands, Inc. We think the court below ruled properly on these matters.
For the reasons above cited the decree appealed from is affirmed.
DREW, C.J., and ROBERTS and THORNAL, JJ., concur.