Sam E. MURRELL and Myrtle H. Murrell, his wife, Appellants,

v.

UNITED STATES of America, 8.84 Acres of Land, more or less, situate in Brevard County, Florida, et al., Appellees.

No. 17696.

United States Court of Appeals
Fifth Circuit.

Aug. 12, 1959.

Rehearing Denied Sept. 25, 1959.

11. Committee reports on Act of 1924 quoted above in this opinion.

Sam E. Murrell, Robert G. Murrell, Sam E. Murrell & Sons, Orlando, Fla., for appellants.

William D. Jones, Jr., Jacksonville, Fla., Albert P. Schwarz, Stephen R. Magyar, Orlando, Fla., Robert F. Nunez, Asst. U. S. Atty., Tampa, Fla., O. B. McEwan, Orlando, Fla. (Jones & Foerster, David W. Foerster, Jacksonville, Fla., Sanders, McEwan, Schwarz & Mims, Orlando, Fla., of counsel), for appellees.

Before RIVES, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

This case arises out of an eminent domain proceeding instituted by the United States against certain lands located in Brevard County, Florida, which were to be used in the expansion of the missile test center at Cape Canaveral. The land to be taken was a part of the Orlantic Subdivision which had been established and platted in 1924. The original plat of this subdivision divided the area into lots and blocks. Block 9, a parallelogram in shape, has an East to West dimension of 375 feet and a North to South dimension of 612.30 feet. The North 370.51 feet of the Block is divided into seven lots numbered from 1 to 7, each being 375 feet long in an East to West direction and having a width of 52.93 feet. The South 241.79 feet of the Block was designated as Lot B. Separating Block 9 from the Atlantic Ocean is a strip of land 125 feet, more or less, in width. The plat of the subdivision showed this strip as being "Reserved for Ocean Boulevard & Boardwalk". The portion of this strip which abuts the seven numbered lots is the land now in controversy.

In 1925 the portions of this subdivision which were unsold at that time were conveyed to Ryan & Roberts. The seven numbered lots in Block 9 had been sold with reference to the plat prior to this conveyance and were not included in it. These lots are now severally owned by the appellees in this case.

In 1954 the appellees, as owners of lots 1 through 7 of Block 9, and Ryan & Roberts, as owner of Lot B of Block 9, joined in a petition to the Board of County Commissioners of Brevard County to have the public rights in the strip of land designated "Reserved for Ocean Boulevard & Boardwalk" vacated and abandoned. This petition alleged that no boulevard could be successfully constructed on this strip, that the other roads designated on the plat were adequate for the passage of traffic, and that it would serve the public purpose for the County Commissioners to renounce and disclaim all rights of the County in this strip of land. This petition was captioned "Petition to Vacate and Disclaim Road or Street". The petition asked that the Board exercise its powers under Chapter 343, Florida Statutes of 1953, which authorized County Commissioners to vacate and close public roads. A resolution was passed by the Board of County Commissioners vacating and renouncing any right of the County and the public in "the lands or interest acquired for road or highway purposes in a certain road or street described as follows, to-wit: That street or road designated 'Reserved for Ocean Boulevard & Boardwalk' between Block 9 of Orlantic Subdivision and high water mark of Atlantic Ocean * * *," and stating that "said road or street be and it is hereby vacated, abandoned and closed and the Board hereby renounces and disclaims any right of the County and the public thereto."

The survivor of Ryan & Roberts, Isabel Roberts, subsequently conveyed all unsold portions of the Orlantic Subdivision to the appellants. The deed described the land by metes and bounds, and excepted all of the sold portions.

This litigation was commenced in 1958 when the United States filed in the District Court for the Southern District of Florida a Declaration of Taking and a Complaint in Condemnation covering Lots 1 through 7, of Block 9, of the Orlantic Subdivision. The accompanying description of land being taken described the lots individually and with respect to each specifically included the "closed street on the East, extended to the ordinary high water mark of the Atlantic Ocean". The complaint alleged that the appellees and the appellants had an interest in each of the parcels.

The appellants filed a claim and answer in which they asserted ownership of the Ocean Boulevard tract. Basing their claim on the deed from Isabel Roberts conveying to them all unsold portions of the subdivision, the appellants alleged that the appellees owned only the adjoining lots and were not and had never been owners of any part of this strip. The appellants prayed that they be paid compensation for the reasonable value of this land.

All of the appellees except Nina Youngblood, owner of Lots 1 and 2, filed motions for summary judgment on the issue of ownership of the strip of land claimed by the appellants. They relied on the affidavits filed by the appellants, an affidavit filed by appellee, Stephen R. Magyar, owner of lot number 3, and certified copies of their deeds to demonstrate that there was no dispute as to any material fact. Appellee Magyar set forth in his affidavit the manner in which this strip had been marked on the plat of the subdivision and the fact of the petition by the appellees and the appellants' grantor and the subsequent resolution abandoning all public rights in the strip. Magyar claimed title to the portion of the strip abutting his lot by virtue of his deed,[1] and the law of the State of Florida that upon the relinquishment of the pub-

---

1. Magyar's deed purports to convey "Lot 3, Block 9, Orlantic subdivision, according to the plat thereof * * *. Together

er with all uplands, submerged lands, littoral rights and riparian rights lying to the East of the above described prop-

lic rights in a street, title vests in the abutting property owners.

The appellants also filed a motion for summary judgment. Following a hearing the district court ruled that when platted the strip of land in question was dedicated and intended for public use as a boulevard and boardwalk, that the boulevard and boardwalk was duly vacated as a public thoroughfare, and that the appellees as owners of lands lying West and adjacent to the boulevard and boardwalk acquired fee simple title to the land in question. The court therefore granted the appellees' motions for summary judgment, denied that of the appellants, and decreed that the appellees each owned the portion of the strip abutting his or her lots and that the appellants had no right, title, or interest therein. From this order the appellants have appealed. The United States has taken the position of a stakeholder and did not actively participate in the appeal.

The primary question presented for our determination is whether the district court correctly ruled that the title to the strip of land in question is in the appellees by virtue of their ownership of the adjoining lots. The appellants' first contention is that the district court erred in ruling that the strip of land in question was dedicated for the public use as a boulevard and boardwalk. Pointing to the use of the word "Reserved" the appellants argue that by marking this strip as he did, the original subdivider manifested an intention to reserve this land for his private use. Numerous authorities stating that the words "Reserve" and "Reserved" mean reserved for private use or withheld from dedication are cited. The appellants further argue that even if there was an intent to dedicate, the dedication was not complete and effective until there had been an acceptance

by the proper public authorities. The record here is said to be devoid of any evidence of an acceptance of the offer to dedicate this strip of land.

 As a general rule the platting of land into blocks and lots with intervening streets clearly indicated thereon and the sale of these lots with reference to the plat constitutes an offer to dedicate the streets to the public use. City of Miami v. Florida East Coast Ry., 79 Fla. 539, 84 So. 726; McGourin v. Town of De Funiak Springs, 51 Fla. 502, 41 So. 541; 10 Fla.Jur. 11, Dedication, § 12. It is also well established that no particular words are necessary to constitute an offer of dedication to the public use. "It is only necessary that such words be employed as will show the grantor's intent." Seaboard Air Line Ry. Co. v. Dorsey, 111 Fla. 22, 27, 149 So. 759, 761; 10 Fla.Jur. 9, Dedication, § 10. In the event the plat is ambiguous, it is settled that the construction must be against the dedicator and in favor of the public. Florida East Coast Ry. Co. v. Worley, 49 Fla. 297, 38 So. 618; Servando Building Co. v. Zimmerman, Fla., 91 So.2d 289. However, we do not think there is any ambiguity in the portion of the plat which now concerns us. The appellants' emphasis on the use of the word "Reserved" overlooks the purposes for which this strip was to be reserved. "Boulevard" is defined as a "broad avenue in or around a city". A "Boardwalk" is "a walk or promenade constructed of planking." Webster's New International Dictionary (1929). There can be no question but that the use of these words evinces an intention that this land be dedicated for and used as a roadway for through public passage. It was so regarded by the appellants' grantor of Lot B in the filing of the petition to vacate as a roadway, the strip which had been platted as a boulevard and board-

---

erty and lying between the North line of said Lot 3 and the South line of said Lot 3, extended eastward out to the three mile limit of the Atlantic Ocean to the extent that such appertain to the property herein described." Appellant Sam

E. Murrell stated in a subsequent affidavit that none of the other appellees have an instrument purporting to convey that portion of the strip abutting their lots.

walk. This petition probably should not be regarded as a judicial admission because not made in a judicial proceeding, nor as an estoppel because no change of position was made by the appellees in reliance upon it. The petition is, however, evidentiary in impeaching the appellants' present claim that there was no dedication for the purpose of a roadway. See 4 Wigmore on Evidence, 3rd Ed. 119–127, 134–139, §§ 1078, 1080.

■ We agree with the appellants that as a general rule an offer to dedicate must be accepted before the public acquires any rights in the property. "However, as between a grantor who has conveyed lots according to a plat, and the purchasers or grantees, there is a so-called dedication of the public places delineated upon the plat in the sense that the purchasers or grantees have the right to keep such places open for the uses indicated on the plat designation, even though there has been no public acceptance." 10 Fla.Jur. 16–17, Dedication, § 16. City of Miami v. Florida East Coast Ry., 79 Fla. 539, 84 So. 726; Roe v. Kendrick, 146 Fla. 119, 200 So. 394. Therefore as against the grantor the rights of the purchasers of the lots and their successors in title, the appellees in this case, are the same regardless whether or not there has been a public acceptance, and the appellants' contention in this regard is without merit.

■ Our conclusion that the plat of the Orlantic Subdivision evidences an intent by the grantor to dedicate the strip of land in question to the public use as a street or roadway is also fatal to the appellants' next contention. It was their argument that even if there had been a dedication, the fee title to the strip remained in the grantor subject to the public easement. In support of this argument the appellants cite the recent Florida Supreme Court decision in Wilson v. Dunlap, Fla.1958, 101 So.2d 801. In that case a strip of land approximately 100 feet wide separated the lots of a subdivision from the Boca Ciega Bay. That strip was designated at various points on the plat as "Beach" and "Beach Parkway". Subsequent to the sale of all of the lots of the subdivision, the grantors executed a deed purporting to convey this strip. The plaintiff, owner of two of the lots abutting the strip, brought an action to cancel the deed. The trial court entered an order cancelling the deed. On appeal the Supreme Court of Florida recognized that there were two competing rules involved. First, it has long been settled in Florida that a person who purchases a lot with reference to a plat of the subdivision takes title to the center of that portion of the street abutting his lot. Smith v. Horn, 70 Fla. 484, 70 So. 435, 437. The second rule was stated in these terms: "in the case of areas set aside on a plat for multiple public uses, abutting owners have an easement in common with other purchasers in the subdivision for whatever uses may be indicated under the circumstances, but in the ordinary situation no grant of the fee to contiguous property owners will be implied as in the case of streets or roadways." [101 So.2d 804.] The court held that the "streets or roadways" rule could not be applied in the absence of a specific finding by the trial court that the marginal area was intended for street purposes exclusively, and therefore the case was reversed and remanded.

In the Wilson case the court also stated, "This Court has long been committed to the doctrine that if a plat 'is complete in itself, and free from ambiguity, it will control * * *.' Porter v. Carpenter, 39 Fla. 14, 21 So. 788." We think the plat in this case falls within the scope of the pronouncement. This plat clearly shows that the grantor's intent was for this strip to be dedicated to the public use as a street or roadway. Therefore, there being no manifestation of a contrary intent, under the rule of Smith v. Horn, supra, the titles of the lots abutting this strip extend at least to the center of the street.

A further question remains. It is whether, under these facts, the appellees' titles extend the entire width of the street to the ordinary high water mark

 

of the Atlantic Ocean. The court, in Wilson v. Dunlap, supra, pointed out the division of the authority in other jurisdictions on this question, but did not find it necessary to decide the question in that case. Although the question, as it related to the ownership of riparian rights, was discussed at some length in the case of Marshall v. Hartman, 104 Fla. 143, 139 So. 441, the court expressly refrained from ruling upon it. However, in Caples v. Taliaferro, 144 Fla. 1, 197 So. 861, 862, the Supreme Court of Florida approved the rule that "when a street or highway is platted on the margin of the grantor's land, a conveyance of the lands bordering the street carries the fee to the entire width of the street unless expressly reserved." This rule, sound in principle, is controlling here.

Since there is nothing in the case now before us to show an intention on the part of the subdivider to retain any interest in the strip of land in question, the appellees' titles extend the entire width of the strip to the ordinary high water mark of the Atlantic Ocean. See Johnson v. Grenell, 188 N.Y. 407, 81 N.E. 161, 13 L.R.A.,N.S., 551; Gifford v. Horton, 54 Wash. 595, 103 P. 988; Taylor v. Armstrong, 24 Ark. 102; 8 Am.Jur. 778–779, Boundaries, § 43.

The appellants next assert that appellees, Nina Youngblood and Stephen R. Magyar, and his wife, derive their titles through tax deeds which vested in them at most a license to the property. No authority is cited in support of this contention. We think it is without merit. Stuart v. Stephanus, 94 Fla. 1087, 114 So. 767; New Fort Pierce Hotel Co., for Use of Carlton v. Phoenix Tax Title Corp., 126 Fla. 552, 171 So. 525; 51 Am. Jur. 937, Taxation, § 1078. This contention, if meritorious, would indicate that a prior owner might be entitled to an award; it would not strengthen the appellants' claim.

The appellants also assert that the appellees cannot contend they purchased these lots in reliance on the dedication of this strip because they were not purchasers in the subdivision in which this strip was located. We see no merit in this assertion either as a matter of fact or a matter of law.

There being no error in the decision of the district court, its judgment is

Affirmed.