PEARSON, Judge.
This is an appeal from a final decree quieting title to a strip of land 15 feet wide between North Bayshore Drive and Biscayne Bay, running between Northeast 17th Terrace and Northeast 19th Street in the City of Miami. The appellants were plaintiffs and sought by their action to establish their individual ownership of separate portions of the strip, and to establish their ownership of the respective riparian rights which are appurtenant to the ownership. The appellee City in its answer neither admitted nor denied the allegations of the complaint. The defendant-appellees, Lehman, who are described by the complaint as claiming “certain rights * * * in conflict with the plaintiffs,” denied plaintiffs’ ownership and contested appellants’ right to exercise any riparian right. The appel-lees, Black and Lumpkin, owners of adjacent property were allowed to intervene and have joined forces with defendants, Lehman. The final decree is affirmed as to the assignments argued by the appellants but reversed upon those argued by the cross-appellant, City, and the chancellor is directed to enter a decree quieting title in the City of Miami to the 15-foot strip together with all riparian rights appertaining thereto.
It is immediately apparent that the real matter in controversy is the existence of a prospective right to fill in the bay in front ■of the strip. The appellants, most of whom own property which fronts upon the westerly side of North Bayshore Drive, claim *665 this right. The individual appellees, who are owners of real property in the immediate vicinity, deny the existence of the right. The City of Miami is in the position of having stipulated with the plaintiffs that it knew of no defense to their claim of title to the strip in question or the claimed riparian rights appurtenant thereto, except that it reserved for itself ownership of the projections of the street ends. Nevertheless, upon the appeal, the city urges that the evidence established its ownership of the entire strip.
The final decree has satisfied none of the parties. It quieted title to “That certain strip of land IS feet wide, lying in front and easterly of (certain lots owned by specified plaintiffs) together with the riparian rights appurtenant thereto,” in certain plaintiffs owning the adjacent specified lots. The decree thus settled the ownership of 6 of the 13 portions of the 15-foot strip. It quieted title to the 7 remaining portions in the City of Miami (one is a street-end, six are lot extensions). No mention is made as to any riparian rights appurtenant to the portions of the strip of which the chancellor found the owner to be the City of Miami.
The plaintiffs upon their appeal seek to reverse the decision of the chancellor whereby the City of Miami was found to be the owner of portions of the 15-foot strip, and further seek to establish plaintiffs’ contention that riparian rights for the entire length of the 15-foot strip are the property of the plaintiffs. The appellees, Lehman, Lumpkin and Black, have cross assigned error. It is their position that the riparian rights appurtenant to the entire 15-foot strip are in the City of Miami. The City has filed no cross assignment but contends that the stipulation[1] mentioned, pertained solely to the filling in of the street-end. The City claims title to the entire 15-foot strip.
The basis for the chancellor’s finding that title to certain portions of the 15-foot strip passed to certain individual owners of lots immediately west thereof, was the provision in the respective deeds from the subdivi-ders.[2] The chancellor found that by the inclusion of these grants in certain deeds, issued after the platting of the subdivision and after many lots had been sold under these plats, the subdivider effectively revoked an earlier dedication of the strip to the public.[3]
The record reveals four plats of the Mira-mar subdivision: (1) Plat Book 1, page 166, October 11, 1912; (2) Plat Book 1, page 187, December 30, 1912; (3) Plat Book 2, page 69, September 8, 1913; (4) Plat Book *666 5, page 4, January 26, 1916. All of these plats reflect that the out lots in controversy in this cause are dedicated as part of “Palm Boulevard” or referred to as “Boulevard,” now being North Bayshore Drive. This street consists of a roadway 42 feet wide having a 15-foot strip east and a 15-foot strip west running along the entire width of said roadway. The western 15-foot strip has been for many years a sidewalk and parkway. The eastern 15-foot strip is directly adjacent to and fronts upon Biscayne Bay. The City has since 1933 maintained this strip as a parkway. It is to this latter 15-foot strip that appellants in this instant case assert ownership and appurtenant riparian rights, including the right to fill the submerged lands in front of the entire subdivision.
In addition to the above-mentioned plats, on January 25, 1917, an instrument of public dedication was entered into and executed by the individual owners and the subdivider of Miramar. This instrument provides in part as follows:
“ * * * (undersigned) do hereby dedicate to the perpetual use of the public the streets, avenues, drives, boulevards and alleys shown upon the aforesaid plat (Plat Book 2, page 69, September 8, 1913) * * *
The force of the appellees’ argument that the 15-foot wide strip is a part of Palm Boulevard is somewhat weakened by the specific reference in the dedicatory language contained in the last two plats above enumerated. The language is substantially the same on the two plats, and is as follows:
“The streets, avenues, drives, boulevards and alleys indicated upon said plat are hereby perpetually dedicated to the free use of all purchasers of lots contained in the above described plat, and the riparian rights and submerged lands in front of the street shown upon the plat as the ‘Prado’, according to restrictions contained in contracts and deeds to purchasers made by the Miramar Company are hereby dedicated to the free use of all purchasers of lots, their heirs and assigns, with the distinct reservation that no fish house or other unsightly building or obstruction of any nature or sort shall be placed East of and in front of the width of such street shown upon the plat as the ‘Prado’ at the point where if the boundaries of same were produced they would intersect with Biscayne Bay.”
The appellants claim that their ownership to the 15-foot strip is by virtue of a claim of title commencing with deeds from the subdivider. The chancellor found that these deeds contained in each case, where he found ownership in the individual plaintiffs, language specifically referring to a portion of the 15-foot strip and attempting to convey the same. The deeds from the subdivider, in the cases where the chancellor found ownership in the City, contained language alluding to “the strip” but the language was found not to be sufficient to convey the title to any portion thereof.
The six deeds from the subdivider which were held sufficient to convey title and riparian rights, were dated as follows: March 21, 1916; January 29, 1917; March 14, 1917; March 30, 1917; April 12, 1917; April 12, 1917. It will be observed that these deeds were after the recordation of all four plats.
There is ample evidence to support the finding of the chancellor that as to the portions of the strip which were the across-the-street extensions of Lot 9, Block 7; Lot 1, Block 8; Lot 4, Block 8; Lot 5, Block 8; Lot 8, Block 8; Lot 12, Block 8, as set forth in the plat of Miramar as recorded in Plat Book 5, page 4, the City of Miami is owner in fee simple. This portion of the decree is based upon the court’s finding that the filing of the respective plats and the instrument of public dedication, operated as a dedication of these portions of the strip to the public. See City of Miami v. Florida East Coast Ry. Co., *667 79 Fla. 539, 84 So. 726, quoted in the final decree.
As to the lots found to be privately owned, the record is not so clear. The chancellor evidently determined, that while the offer of dedication was just as explicit as to these lots, it was not effective because of intervening circumstances. The circumstances, referred to, were the making of deeds to certain individuals in contravention of the plat. Upon the latter holding, the decree contains error. The court overlooked the fact that all parties purchasing lots with reference to the plats, which designated the strip as a part of the street area, were vested with rights in and to these areas. These rights were not subject to unilateral cancellation by the sub-divider. See McCorquodale v. Keyton, Fla.1953, 63 So.2d 906, and cases cited therein.
The appellants urge that the “offer of •dedication” represented by the plats was not accepted by the City. This position is unavailing in view of the holding of the Supreme Court of Florida in Earle v. McCarty, Fla.1954, 70 So.2d 314, 316, that: “The dedication of the ‘drive’ by deed was accepted when the instrument (the plat) was accepted.”
This last cited case is urged as authority for the proposition that no title to the 15-foot strip could pass to the City because it was an “unlabeled space”. The Earle v. McCarty opinion clearly held that there were no facts alleged in the complaint dismissed, upon which it could be held, that the land between the street and the sound was a part of the street or a parkway. In the instant case, the chancellor found, upon the basis of competent and sufficient evidence, that the strip was a part of the street, and in 7 of the 13 portions before the court, held the City to be the owner upon that basis.
Since this strip was a part of the street in each case, the attempt of the subdivider to later convey ownership of a portion thereof was ineffective.
We have considered the other numerous' points raised by the appellant and the cross-appellant and find them without merit or unavailing in view of the holding set forth, except that in view of this result, we hold the assessment of costs against the defendants to be improper. Therefore, the decree is affirmed in part and reversed in part and the case remanded for the entry of a decree in accordance with this opinion.
Affirmed in part and reversed in part.
HORTON, C. J., and CARROLL, CHAS., J., concur.

. In part as follows: “The City of Miami, a municipal corporation, has no knowledge as to any defense to the allegations set forth in paragraph 1 of plaintiffs’ complaint, alleging that plaintiffs are the owners in fee simple of the real property therein and above described, but chooses neither to admit nor deny the same, and demands strict proof thereof.”

. Typical of these provisions is that quoted in the final decree as to Lot 1, Block 7:
“ * * * together with a strip of land 58.1 feet long and 15 feet wide situate immediately east of and adjoining the east line of Palm Boulevard, and also, together with all submerged land and common law riparian rights 58.1 feet in width contained between the north and south lines of said Lot numbered 1 * *

. The chancellor in a lengthy and well written final decree found in part:
“Examining the case at bar and the exhibits, it appears from the testimony and the exhibits that it was the intention of the original subdividers of the Miramar Subdivision that said 15 foot strips of land bordering the streets in said subdivision and 10 foot strips bordering the street known as the Prado were intended to be used as sidewalks and were intended to be dedicated for public use.”

“It appeared that as of said date it was the intention of the -grantor to revoke any dedication for sidewalk purposes as indicated in said deed by specifically reserving and setting forth a conveyance of said 15 foot wide strip by 58.1 feet long. Said revocation was made prior to and before any acceptance of said dedication by the public or the municipality.”