**UNITED STATES of America,
Appellant,**

v.

**A. Harvey GOULD, Appellee.**

**No. 18918.**

United States Court of Appeals
Fifth Circuit.

April 10, 1962.

Edward F. Boardman, U. S. Atty.,
Miami, Fla., Don M. Stichter, Asst. U.
S. Atty., Tampa, Fla., Ramsey Clark,
Asst. Atty. Gen., Dept. of Justice, Roger
P. Marquis, Hugh Nugent, Attys., Dept.
of Justice, Washington, D. C., for appellant.

William D. Jones, Jr., Jacksonville,
Fla., David W. Foerster, Jones & Foerster, Jacksonville, Fla., A. Max Brewer,
Crofton, Brewer & Holland, Titusville,
Fla., for appellee.

Before TUTTLE, Chief Judge, and
BROWN and BELL, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal by the Government
from an order by the trial court dismissing a motion by the United States to
vacate a judgment awarding $31,200.00
to the record title holder of land in a
condemnation suit. The gist of the Government's case is that the lands involved
were all subject to easement as public
streets and as a city hall site in a subdivision, and that the owner of such land
could not be entitled to anything more
than nominal damages, but that notwithstanding this principle of law, the Government, acting through its local district
attorney, has mistakenly assumed that
clear title was in the condemnee and had
stipulated that the amount might be received without further proof or litigation.
The appellee-land owner claimed first that
the lands involved had not been dedicated
to any public servitude and, second, even
if they had there is no justification for a
reversal of the trial court's refusal to
vacate the judgment on the ground of
mistake.

The land in issue is known as Tract
1462 in the condemnation proceedings for
Cape Canaveral Missile Test Annex in

Brevard County, Florida. In connection with this acquisition of land for this project, the United States had acquired, either by purchase or condemnation, all of the land in a subdivision platted by the DeSoto Beach Improvement Company in 1922, except for the particular land here in controversy. In filing the condemnation proceedings for this land the Government sought to condemn "all of the avenues, drives, alleys, and streets lying east of the center line of Seminole Avenue, as shown on plat of DeSoto Beach re-Subdivision, recorded in Plat Book 3, page 17, of the public records of Brevard County, Florida, less and except the following described portions of Ocean Boulevard [the exception is not of significance here] and also that part of the civic center designated as The City Hall site on said plat of DeSoto Beach re-Subdivision."

We do not have in evidence before us Plat Book 3, page 17, of the public records of Brevard County. All we have that was before the trial court in connection with the proceedings here appealed from are the plats that were attached to the Government's declaration of taking. One of these plats, *which the parties in the stipulated judgment agreed* described Tract 1462, showed that the five streets which are the principal subject of this litigation, that is Poinsettia Drive, Palmetto Drive, Ponce de Leon Drive, Ocean Drive and Brevard Drive, running in a generally east and west direction, extended down to the waters of the Atlantic Ocean on the east. This plat also shows a line varying in width from 100 to 150 feet to the west of the Atlantic Ocean line designated "shoreline as previously constructed from deed descriptions."

Several things are apparent from this plat. The first is that the land sought to be condemned by the Government is depicted as "streets" extending to the ocean. The second is that there has been an accretion of between 100 and 150 feet of ocean front to these designated street areas at some time since the tract was first platted. Third, it is apparent that

at one time in the past there has been a north-south boulevard denominated "Ocean Boulevard," which, as indicated on this plat, had been "closed." In the fourth place it is apparent that the eastern boundary of Ocean Boulevard, as it was originally platted, itself lay some distance from the edge of the waters of the Atlantic Ocean.

The condemnation proceedings indicated as the names of "purported owners" appellee Gould, one Rufus M. Robbins, and Brevard County, Florida. The complaint also added the paragraph as to "unknown owners."

The purported owners Gould and Robbins both filed claims to the property. Pending the trial of these claims, a stipulation was entered into by both Gould and Robbins, and the United States, represented by the United States Attorney for the Southern District of Florida, which included the following paragraph:

"3. That the sum of $31,200.00, inclusive of interest, is a fair, just and adequate compensation for the taking by plaintiff of the estate and interest in said property as described in paragraph 6 hereof."

Then paragraph 5 was as follows:

"That said compensation shall be paid and disbursed as follows: Unto those entitled thereto as a matter of law."

Thereafter, the trial court sustained a summary judgment in favor of Gould and as against the Robbins' interest, holding that Gould held title to the property. This decision was appealed on behalf of Robbins, and the trial court's judgment in this regard was affirmed by this Court. Robbins v. Gould, 5 Cir., 278 F.2d 116.

Before this decision was made the judgment of the district court, however, the United States, apparently coming to the conclusion that it had been too precipitant as to the matter of entering the stipulation, since it now believed that only nominal damages were payable to the owner of these "streets," including the accretions to the streets, filed a peti-

tion to vacate judgment seeking relief under Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.[1]

The motion here was filed within the period of one year. The basis for said motion is stated in the following terms:

"1. Said judgment awarding compensation for Tract No. 1462 is void and inequitable for the reason that:

"a. Said judgment is based upon a stipulation for judgment, said stipulation is predicated upon the erroneous understanding of the plaintiff that defendant A. Harvey Gould was the owner at the date of taking of the real property described herein as Tract 1462, subject only to a determination of the claims of the defendants Florence N. Robbins and Theodore Robbins.

"b. Although counsel for plaintiff entered into said stipulation for judgment in good faith, it was based upon an understanding that defendant A. Harvey Gould was the owner in fee when said understanding was without foundation in fact, since the said A. Harvey Gould did not hold title to or own those certain avenues, drives, alleys and streets described in the Declaration of Taking as being within Tract No. 1462 nor did the said defendant own the strips of shore frontage at the East end of said streets. Therefore, said stipulation was null and void and without legal effect."

This motion was opposed by Gould, who, after the remittitur was entered from the Court of Appeals affirming the fact that Gould had title to the property, filed a motion to dismiss the petition to vacate judgment. Gould's motion generally asserted that the judgment had been agreed to by stipulation, that the Court of Appeals had affirmed title in Gould, and that no mutual mistake had been shown warranting the setting aside of the judgment. Without assigning the basis of his ruling, the trial judge granted Gould's motion and dismissed the Government's petition to vacate judgment. We do not know, therefore, whether the trial court granted the motion on the theory that the title in Gould was res adjudicata, whether it was necessary to find mutual mistake, or by holding on the merits against the Government's claim that the documents on their face demonstrated that the owner of the streets was not entitled to receive more than nominal damages.

While it is always unsatisfactory in litigation for a court to be compelled to undo something that appears at one time to have been finally adjudicated, and especially where the parties have at least at one stage of the proceedings agreed upon the initial result, we must consider the motion to vacate the judgment as entitling the Government to consideration at the hands of the trial court if it appeared without dispute that, under recognized principles of law, the judgment had been entered under a clear mistake either of fact or of law.

█ The language of the rule is permissive. It provides that the trial court "may" set aside the judgment complained of. This means, of course, that the trial court is to exercise a sound, legal discretion, that is, a discretion "guided by accepted legal principles." See 7 Moore's Federal Practice, p. 223, et seq. See also Tozer v. Chas. A. Krause Milling Co., 3 Cir., 189 F.2d 242, Erick RiosBridoux v. Eastern Air Lines, 93 U.S.App.D.C. 369, 214 F.2d 207, and also Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266. In all of these cases the appellate court reversed the refusal of the trial court to set aside a judgment, hold-

---

1. So far as is relevant here this Rule provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, in-

advertence, surprise, or excusable neglect: * * * The motion shall be made within a reasonable time, and for reasons (1) * * * not more than one year after the judgment, order, or proceeding was entered or taken."

ing that such failure to set aside the judgment amounted to an abuse of discretion.

As pointed out by Professor Moore in his treatise,

"Where the district court has the power to act, pursuant to the provisions of Rule 60(b), relevant propositions and factors that it may consider in exercising its discretion are: the general desirability that a final judgment should not be lightly disturbed; the procedure provided by Rule 60(b) is not a substitute for an appeal; the Rule should be liberally construed for the purpose of doing substantial justice; whether, although the motion is made within the maximum time, if any, provided by the Rule, the motion is made within a reasonable time; if relief is sought from a default judgment or a judgment of dismissal where there has been no consideration of the merits, whether in the particular case the interest of deciding cases on the merits outweighs the interest in orderly procedure and in the finality of judgments, and whether there is merit in the defense or claim, as the case may be; if relief is sought from a judgment rendered after a trial on the merits, whether the movant had a fair opportunity to present his claim or defense; whether there are any intervening equities which make it inequitable to grant relief; and any other factor that is relevant to the justice of the judgment under attack, bearing always in mind that the principle of finality of judgments serves a most useful purpose for society, the courts, and the litigants —in a word, for all concerned.

"In granting relief the Court may impose just terms."

As this case stood before the trial court at the time of its denial of the Government's motion to vacate the judgment, it was not disputed by the parties that the condemnation proceedings related to property that was part of a subdivision which had been platted and from which building lots had been sold according to plat, and which was dedicated by the plat to public purposes, that is, in the one instance, for a city hall, and in the other instance, for public streets. The Government contends that the taking of a street system gives right to substantial compensation only where the governmental unit from which it is taken has to replace it, citing City of Fort Worth, Texas v. United States, 5 Cir., 188 F.2d 217, and numerous cases from other circuits. It is the claim of the United States that whether or not there has been a public acceptance by the county or other governmental authority of the platted streets and civic center any person who acquires the title to the land that is so dedicated, is entitled to nothing more than nominal value in the event of condemnation. Smith v. Horn, 70 Fla. 484, 70 So. 435. See also McCorquodale v. Keyton, Fla., 63 So.2d 906. In City of Miami v. Florida East Coast Railway Co., 79 Fla. 539, 84 So. 726, the Supreme Court of Florida distinguishes between the creation of an obligation by a public body, like a municipality or county, to improve and maintain a public street and the obligation that flows from a platted easement in connection with the sale of lots of a subdivision. The court there said:

"* * * an acceptance of a dedication of a park by or for the public is not essential to give private rights to purchasers of lots who buy with reference to the dedicating plat which shows a dedicated park." 79 Fla. 539, 552, 84 So. 726, 730.

See also Murrell v. United States, 5 Cir., 269 F.2d 458, 462.

The appellee here does not seriously contend that if in fact the five streets, as to which they claim title, were originally platted to extend across the designated ocean boulevard so as to reach the then high water mark of the Atlantic Ocean, he would be entitled under the existing law to more than nominal damages. He contends, simply, that "none of the five named drives project eastward beyond the westerly boundary of Ocean Boulevard" on what he speaks of as "the

original plat." The original plat, so-called, is attached as an appendix to appellee's brief. We have carefully studied the exhibits that were before the trial court at the time of the hearing and do not find that this plat was ever produced or introduced in evidence. The appellee contends that since the five streets terminated, according to the "original" plat, at the western boundary of Ocean Boulevard, any accretions on the ocean side of Ocean Boulevard cannot be considered as accretions to streets, but should be considered as private property, the title to which remained in the owners of the subdivision.

The Government, on the other hand, seeks to counter this contention, even though as we have pointed out, no such plat is in evidence in the case, by stating that appellee petitioned the officials of Brevard County, Florida, to vacate Ocean Boulevard, and that as a condition for such vacation he agreed that the streets would continue to run to the waters of the Atlantic Ocean, and that in fact the order of the county commissioners vacating Ocean Boulevard had been entered on this condition. In view of the state of the record before us, we cannot at this time consider either the so-called "original plat" or the application to the county commission or its action, because none of these matters was in evidence before the trial court.

On the record before us it appears that the United States and the appellees stipulated that the land which the Government sought to condemn was as described on the plat attached to the declaration of taking. As shown above, this plat clearly showed the streets extending across Ocean Boulevard and into the waters of the Atlantic Ocean. On this state of the record, it would appear that the United States would, under generally accepted principles of damages recognized in condemnation cases, be entitled to take the land upon the payment of nominal damages. However, it may be that since the United States readily entered into a stipulation agreeing that the amount of compensation should be $31,200.00, the condemnee saw no advantage or reason for undertaking to prove that there were mistakes in this Government plat and that there had really never been any plat purporting to dedicate to public use that part of the streets extending east of Ocean Boulevard. If, therefore, the Government is entitled to have the consent judgment set aside because, on the present record, it appears clearly that an injustice has been done to it, then it is equally clear that the appellee should then be afforded an opportunity to withdraw from his stipulation agreeing to the correctness of the description of the lands sought to be condemned.

We conclude that since Rule 60 (b) should be liberally construed for the purpose of doing substantial justice, and that the motion under the rule is not here being used as a substitute for an appeal, inasmuch as it was a consent judgment, and bearing in mind that in granting the relief the court had the power to impose just terms, including, if it appears proper, such payment to the appellee as would fairly represent the damage he had suffered by reason of relying upon the Government's stipulation, the United States made a prima facie showing that it was entitled to have the judgment vacated. We conclude, therefore, that the trial court should not have dismissed the Government's motion to vacate on the record as it then stood. Since, however, the record as it then stood included a stipulation by the condemnee, which he may wish to modify, we cannot say that the United States was entitled as a matter of law to an order vacating the judgment. We think that a proper procedure would have been for the trial court to permit appellee to undertake to prove his version of the true facts, and then permit the Government to make such further proof as appeared appropriate, and then to rule on the motion to vacate in the light of the proof thus developed.

To permit the court to handle the matter as suggested, the order of the trial court dismissing the Government's motion to vacate is reversed and the case is remanded to the district court for its

consideration of the motion to vacate on its merits after the facts are fully developed without reference to the prior stipulations of the parties.

Reversed and remanded.