**In the Matter of Ottis Hoyle HANKINS, d/b/a Hankins Electric Company, a bankrupt.**

**No. EBK 71–136–K.**

United States District Court, N. D. Mississippi, E. D.

Nov. 20, 1973.

Jacob C. Pongetti, Trustee, Columbus, Miss., J. Joshua Stevens, Jr., West Point, Miss., for First National Bank.

Johnny N. Tackett, Aberdeen, Miss., for Wilemon Lumber Co.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This case is before the court for review of an order of the referee in bankruptcy denying the application of Wilemon Lumber Company, Inc. (Wilemon), for the recovery of $8,500 previously paid by it into the bankruptcy court as money owed to the bankrupt, Ottis Hoyle Hankins, d/b/a Hankins Electric Company.

In 1970, Wilemon, as general contractor, entered into a contract with the United States for the construction of a building at Columbus Air Force Base, Mississippi, and subcontracted the electrical work to Hankins. Wilemon executed performance and payment bonds to the United States as required by 40 U. S.C. § 270a et seq., commonly known as the Miller Act.

Prior to the completion of this job, Hankins, on November 24, 1971, filed his voluntary petition in bankruptcy and listed Wilemon as a debtor. Jacob C. Pongetti, Trustee in Bankruptcy, insti-

tuted a turn-over proceeding against Wilemon, claiming it owed the bankrupt in excess of $14,000. Wilemon answered, admitting it was indebted to the bankrupt under the electrical subcontract, but only for $1,005.67, which amount it tendered to the trustee. The First National Bank of West Point (bank) intervened in the turn-over proceeding, claiming that it held an assignment of monies due from Wilemon to the bankrupt as security for advances made to Hankins prior to the date of the bankruptcy proceeding. When the case came on for trial, the parties—the trustee, the bank, and Wilemon—entered into a stipulation of record that Wilemon owed the bankrupt $8,500 under the subcontract; whereupon Wilemon participated no further in the litigation. The referee proceeded to hold that the bank did not have a perfected security interest in the subcontract and the trustee was entitled to receive the $8,500. Upon the referee's entry of an order to that effect on June 19, 1972, Wilemon paid the additional sum to the trustee. The bank sought review of the referee's decision in the United States District Court, which affirmed the referee's order.

On February 27, 1973, Wilemon filed its present petition with the referee, seeking recovery of $8,500, asserting that the money had been mistakenly paid to the trustee. Wilemon contended, and the proof established, that it was legally liable to two claimants, Graybar Electric Company, Inc., and Southern Electric Supply Company, Inc., for materials purchased by the bankrupt, and delivered to and used in the Air Force Base job, and that Wilemon has been required to pay Graybar $23,560.27 for materials so purchased by the bankrupt and has paid $3,500 in settlement of the Southern Electric claim. Graybar in EC 72-95-S and Southern Electric in EC 72-102-S brought suit in this federal district court to enforce their claims against Wilemon. Wilemon defended both actions on the ground that it had not been served statutory notice of the materialmen's claims within 90 days after the last delivery date of the materials.[1]

The evidence in the federal court litigation, however, clearly showed that timely statutory notice had been given to Wilemon by registered mail by Graybar and a sufficient notice in writing served upon it by Southern Electric. Both Miller Act suits, which were commenced in September 1972, were set for trial on February 6, 1973, on which date judgment was entered on the Graybar claim

1. The Miller Act provides, in relevant part (40 U.S.C. § 270b(a)):

"Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however*, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written no-

tice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons."

The courts have generally held that timely written notice to a contractor is sufficient to impose liability, although not sent by registered mail in accordance with this section. See note 110, 40 U.S.C. § 270b, p. 554. Accord, Liles Construction Co. v. United States, 415 F.2d 889 (5 Cir. 1969).

and compromise effected with Southern Electric.

The evidence before the referee in the present appeal plainly establishes that at the time Wilemon stipulated that it owed $8,500 to the bankrupt, i. e., May 20, 1972, Ralph Wilemon, the company's president, and Johnny N. Tackett, its attorney, were under the impression that statutory notices from the two claimants had not been received; that the 90-day period had long expired since the date of last delivery of material to the bankrupt, and that they could, therefore, disregard information that the bankrupt had not paid Graybar and Southern Electric accounts and that the claimants were looking to Wilemon to pay same. That written notices had been timely received was known to Wilemon's employees, but unknown to its president or Wilemon's counsel at the time of the stipulation and consent judgment. The referee determined that the failure of Ralph Wilemon to know that requisite statutory notices had been received on both claims was due to his negligent omission in making a full inquiry of his employees and checking correspondence in the files of his company.

The $8,500 remains in the trustee's possession, and no portion of it has been disbursed.

■ While the learned referee acknowledged that he had the power to absolve Wilemon from the consequences of a clear mistake, he concluded that, in the exercise of sound discretion, he would not be justified in so doing. The referee was of the view that since settlement agreements are given favored treatment by courts, a party to a consent judgment should not be able to relieve himself of the settlement merely because of an error in business judgment or because of lack of knowledge due to negligent inattention to one's affairs. Findings of fact by the referee are, of course, conclusive upon review by the district court unless clearly erroneous; and such findings should not be disturbed on appeal unless there is most cogent evidence of mistake or miscarriage of justice.

■ Accepting the findings of fact as made by the referee, we are constrained to hold that his legal conclusion is erroneous and must be set aside. Ordinarily, a party may obtain relief from an order of a bankruptcy court on the same terms and conditions that he may do so from a judgment of the United States District Court. Rule 60(b) of F.R.Civ. P.[2] provides that the court may relieve a party from a final judgment or order for reasons of mistake, inadvertence, surprise, excusable neglect or any other reason justifying relief from the operation of the judgment, provided the motion for such relief is made within a reasonable time, and not more than one year after the judgment was entered.

■ The referee did not specifically address the effect of Rule 60(b), but the trustee in bankruptcy does acknowledge the rule's applicability to the present situation. He urges that on appeal we should recognize the latitude of discretion afforded to the referee, here the trial judge, in granting or withholding such relief. The language of the rule is indeed permissive, as it provides that the trial court "may" set aside the judgment complained of. "This means, of course, that the trial court is to exer-

2. "On motion and upon such terms as are just, the court *may* relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) *mistake, inadvertence, surprise, or excusable neglect*; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. *The motion shall be made within a reasonable time, and for reasons (1)*, (2), and (3) *not more than one year after the judgment, order, or proceeding was entered or taken.*" (Emphasis added).

cise a sound, legal discretion, that is, a discretion 'guided by accepted legal principles.' " United States v. Gould, 301 F.2d 353 (5 Cir. 1962). In *Gould,* the Fifth Circuit cited various appellate decisions reversing the refusal of trial courts to set aside judgments coming within the provisions of Rule 60(b) and holding that such failure constitutes an abuse of discretion. The Fifth Circuit emphasized not only that the rule should be liberally construed for the purpose of doing substantial justice but that all pertinent factors should be considered. *Gould* quoted with approval the applicable criteria under Rule 60(b), as stated in Moore's Federal Practice, at 356, as follows:

"Where the district court has the power to act, pursuant to the provisions of Rule 60(b), relevant propositions and factors that it may consider in exercising its discretion are: the general desirability that a final judgment should not be lightly disturbed; the procedure provided by Rule 60(b) is not a substitute for an appeal; the Rule should be liberally construed for the purpose of doing substantial justice; whether, although the motion is made within the maximum time, if any, provided by the Rule, the motion is made within a reasonable time; if relief is sought from a default judgment or a judgment of dismissal where there has been no consideration of the merits, whether in the particular case the interest of deciding cases on the merits outweighs the interest in orderly procedure and in the finality of judgments, and whether there is merit in the defense or claim, as the case may be; if relief is sought from a judgment rendered after a trial on the merits, whether the movant had a fair opportunity to present his claim or defense; whether there are any intervening equities which make it inequitable to grant relief; and any other factor that is relevant to the justice of the judgment under attack, bearing always in mind that the principle of finality of judgments serves a most useful purpose for society, the courts, and the litigants—in a word, for all concerned."

The facts in *Gould* well illustrate how the rule operates. In a proceeding to condemn land, the government had stipulated that the value of the defendant's interest was $31,200. Thereafter, the government filed timely motion to vacate the consent judgment on the ground that it had misunderstood the nature of the defendant's interest in the land and the property owner was actually entitled to receive no more than nominal damages. The refusal of the trial court to set aside the judgment was held to be an abuse of discretion.

In Laguna Royalty Co. v. Marsh, 350 F.2d 817 (5 Cir. 1965), the court made the following pertinent comment:

"In analyzing the 60(b) aspect, we recognize that Rule 60(b) is to be construed liberally to do substantial justice. Serio v. Badger Mut. Ins. Co., 5 Cir., 1959, 266 F.2d 418; 3 Barron & Holtzoff, Federal Practice & Procedure §§ 1322, 1328 (Wright ed. 1958). The rule is broadly phrased and many of the itemized grounds are overlapping, freeing Courts to do justice in hard cases where the circumstances generally measure up to one or more of the itemized grounds." (at p. 823).

In 1970, the Fifth Circuit again spoke of Rule 60(b) in these words:

"The provisions of this rule must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of *all* the facts. In its present form, 60(b) is a response to the plaintive cries of parties who have for centuries floundered, and often succumbed, among the snares and pitfalls of the ancillary common law and equitable remedies. It is designed to remove the uncertainties and historical limitations of the ancient remedies but to preserve all of the various kinds of re-

lief which they offered." Bankers Mortgage Co. v. United States, 423 F. 2d 73, 77 (1970). See also Smith v. Jackson Tool & Die, Inc., 426 F.2d 5 (5 Cir. 1970).

■ Because of the liberal construction which the Fifth Circuit has accorded Rule 60(b), we decline to follow Kahle v. Amtorg Trading Corp., 13 F.R. D. 107 (D.N.J.1952), a decision which is relied on by the trustee. *Kahle* refused to relieve plaintiffs of adverse judgment on the ground of mistake because plaintiffs had failed to turn over to their attorney correspondence material and relevant to the issues raised by the defense. The rationale of the decision was that since the plaintiffs did not have newly discovered evidence under (b)(2) which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b), the plaintiffs could not resort to relief under (b)(1) on the ground of mistake, inadvertence, surprise or excusable neglect. We do not think Rule 60(b) is so circumscribed as to require a showing, as condition for relief, that the evidence of mistake or inadvertence could not have been made available by due diligence.

■ When the various factors which *Gould* enunciated are considered in the case sub judice, we are persuaded that the equities preponderate heavily in favor of Wilemon. Without the slightest dispute, Wilemon acted under a misconception when it admitted owing the bankrupt $8,500 or any sum whatever. It mistakenly concluded that it had no liability on the two materialmen's claims which had been incurred, not by it but by the bankrupt. Whether this mistake is characterized as one of law or of fact, it is nevertheless mistake or inadvertence relievable under Rule 60(b). It is equally certain that this mistaken view of no liability was caused by Wilemon's neglect in not noting the claimants' written demands which were either mailed to or served upon its employees. Wilemon had a complete defense to the turnover proceeding begun by the trustee, for had the truth been known at the time of the stipulation, Wilemon would have been adjudged to be a creditor, and not a debtor, of the bankrupt. Although Wilemon would not have committed this mistake except for its own neglect, this should not convict Wilemon of such inexcusable conduct as to bar it from relief for patent error. It is not enough to say that in admitting judgment for $8,500, there was no overreaching, or fraud, worked upon Wilemon, or that the trustee or the bank contributed in any way to the mistake. Rule 60(b), by its very words, recognizes mistake as a ground of relief. Moreover, the motion to set aside the judgment was made by Wilemon as soon as it discovered its mistake as a result of litigation instituted by the materialmen. We must also remember that there was no consideration by the bankruptcy court on the merits as to the bankrupt's claims against Wilemon, but merely the entry of a judgment based upon an erroneous stipulation.

Finally, the trustee holds the funds for the benefit of the bankrupt's creditors, no part of which has been distributed. No one has changed his position or acted to his prejudice in reliance upon Wilemon's mistake; and there are no intervening equities which make it inequitable to grant relief from the order.

The court may not close its eyes to the plain truth that unless the judgment is set aside, Wilemon has been required to pay a substantial sum of money that it does not owe to the bankrupt or his estate. Since this predicament is altogether the product of Wilemon's mistake when entering into the stipulation upon which the referee's order was based, we think that substantial justice should be done by rectifying this error under Rule 60(b). Such a result clearly outweighs any interest which courts may have in orderly procedure and in the finality of judgments as applied to the facts of this case, for no legal harm can result to either the bankrupt's estate, the creditors or the trustee, by receiving only the

funds and property which do belong to the bankrupt. It would be inequitable for them to profit from money erroneously paid into the bankruptcy court.

Let judgment be entered reversing the order of the referee in bankruptcy, and remanding the cause for entry of an order not inconsistent herewith.