W. Carey CRUTCHER, etc., et al.,
Plaintiffs-Appellants,

v.

The AETNA LIFE INSURANCE CO., et al., Defendants-Appellees,

AETNA LIFE INSURANCE CO. and Aetna Casualty and Surety Co.,
Plaintiffs-Appellees,

v.

W. Carey CRUTCHER,
Defendant-Appellant.

Nos. 83–2514, 83–2635.

United States Court of Appeals,
Fifth Circuit.

Nov. 19, 1984.

Reynolds, Allen & Cook, Joe H. Reynolds, John O. Tyler, Jr., William E. Junell, Jr., Houston, Tex., for W. Carey Crutcher, et al.

Fulbright & Jaworski, James C. Slaughter, Houston, Tex., for Peat, Marwick and Mitchell.

Susman, Godfrey & McGowan, H. Lee Godfrey, Houston, Tex., for Aetna Life Ins., et al.

Before BROWN, GEE and RUBIN, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This decision resolves two appeals by Crutcher arising from a common body of facts. In the first action (No. 83–2635), defendant Crutcher appeals from the denial of his Rule 60(b) motion to set aside the judgment entered against him on November 5, 1982. In the second action (No. 83–2514), plaintiff Crutcher appeals from the dismissal of his claims against Aetna. Both cases center on personal guarantees given by Crutcher to Aetna to secure moneys loaned to various Australian third-party entities. The purpose of the money loaned by Aetna was to fund the additional development of huge agricultural projects in the Australian outback. The size and scope of the development was truly staggering.[1]

## I.

After the Australian third parties defaulted on their loans, Aetna sued Crutcher (first case) on his guaranties in March of 1982. Crutcher answered and Aetna filed for summary judgment in August of 1982. At a hearing on the motion for summary judgment in November of 1982, Crutcher was represented by his original counsel in this case. Crutcher's first attorney conceded that his client was liable to Aetna and consented to Aetna taking judgment against his client. The district court entered judgment against Crutcher on November 5, 1982, for an amount totaling over $22 million.[2] Crutcher's attorney did

---

1. As an example, the court was informed at oral argument that the acreage involved in the contemplated development covered four and one-half million acres, this is an area approximately one-half the size of Wyoming. Fields were to be prepared for gravity flow irrigation with laser guided equipment so that one end of a 50,000 acre field was exactly one foot lower than the other end of the tract. Since the project is in a very harsh climate, irrigation waters were obtained from an elaborate system of levees con-

structed along the path of a river which is dry six months of the year, but which during the rainy season is second in size only to the Amazon.

2. To resolve any further confusion over the issue of what kind of judgment is at stake in this case, the district court—despite its language and that of Crutcher during oral argument—did not grant a default judgment. The record reveals that judgment was granted at a hearing on Aet-

not appeal. Through his present counsel, Crutcher now alleges that his original counsel informed him that he had no good defense to Aetna's lawsuit and that he relied on this advice to his detriment.

In January of 1983, well after the 30 day limitation in Rule 59 for a motion to amend the judgment, Crutcher retained new counsel. His new counsel informed him that he had certain defenses and counterclaims which should have been raised by his prior counsel in the guarantee suit with Aetna. These counterclaims are the subject of the other (second) case before us on this appeal. In August of 1983 Crutcher's new counsel filed a Rule 60 motion to set aside the November 1982 judgment alleging inadequate representation by prior counsel and calling attention to cases favoring trial on the merits over summary dispositions. This motion was denied by the district court and the appeal in this first case followed.

### II.

The companion (second) case before us on this appeal involves the counterclaims Crutcher, through his present as opposed to original counsel, now asserts against Aetna. In substance, Crutcher and Northern Development Party (NDP)[3] negotiated for an agricultural loan with Aetna. NDP was a part of the Camballin Farms limited partnership—the partnership responsible for the development of the Australian agricultural projects. Originally the loan pro-

ceeds were to be available in January of 1980. However, the moneys were not forthcoming until June of 1980. Crutcher alleges that this delay of the loan money caused him to fail to get a crop planted, resulting in the absence of a cash flow from which to make the scheduled payments on the money Aetna advanced. Crutcher contends Aetna's late funding yielded the bitter harvest of default. Aetna replies that the delay was the result of Crutcher's failure to free the Australian collateral of liens. At oral argument both sides agreed that the loan agreement clearly contemplated that the moneys would be provided only after unencumbered collateral was available to secure the loan.

■ Regardless of the parties' contentions surrounding the late funding of the loan, it is clear that the Australian partnership was unable to carry out its planned income producing operations. After default, Aetna, as was its right under the loan agreement between the parties, appointed receivers for the agricultural property pursuant to Australian law.[4] Aetna then sued Crutcher on his guarantees (the first case before us in this appeal). In February of 1983, Crutcher, Camballin Farms, and NDP sued (the second case) Aetna, A.E. Four,[5] and Mr. Holman[6] alleging breach of fiduciary duties, mismanagement, self-dealing, tortious interference, and conspiracy. They also sought to cancel the receivership. The district court grant-

---

na's summary judgment motion with counsel for all parties in attendance. At that time Crutcher's original counsel stated he had no good defense to Aetna's action and no opposition to judgment being entered against his client.

3. Crutcher controls NDP because he owns Australian Land and Cattle Co., which in turn owns NDP, which in essence owns Camballin Farms. Both NDP and Camballin Farms are in receivership. Crutcher sued on their behalf; Aetna contends that Crutcher cannot bring this derivative suit since he is in bankruptcy and no longer controls the shares of either NDP or Camballin Farms. We find the receivers to be indispensable parties in this case and accordingly, we express no opinion on the availability of such "double derivative" suits.

4. Peat Marwick & Mitchell, an Australian accounting firm, was designated the receiver. It appears to the court that under Australian law the actual receivers of property must be individuals. As a result, a Mr. Young and a Mr. Anderson, members of the Peat Marwick firm in Australia, are properly seen as the actual Camballin Farms receivers.

5. A.E. Four is a Connecticut Corporation which does all its business in Australia.

6. Mr. Holman is a loan officer with Aetna. He is a Connecticut resident whose activities in Texas were strictly in the course of his employment with Aetna.

ed Aetna's motion to dismiss [7] finding that the plaintiffs had failed to join an indispensable party under F.R.C.P. 19—the Australian receivers. The court also held that the action was a derivative claim by Crutcher and that the receivers were the proper parties to bring an action to protect the interest of Camballin Farms. The district court stated that since Crutcher had not obtained the consent of the receivers, the plaintiff's action should be dismissed. The court pointed out that Crutcher had not complied with Rule 23.1, which requires a verified complaint and particularized allegations of the efforts made to get the receivers to bring suit. The court rejected Crutcher's claim that Aetna was the receivers' principal since, under Australian law and the mortgage agreement, the receivers were deemed to be the agents of Crutcher. On appeal Crutcher argues that a futile demand is not required; Aetna agrees, but contends that more than bald-faced allegations are required to establish that demand upon the receivers would be ineffective. Crutcher also contends that he is a debtor in possession and that as a result his authority over NDP and Camballin Farms is unaffected by his filing for personal bankruptcy. Moreover, Crutcher contends that the receivers are not indispensable parties since no claim is asserted against them personally. We agree with the district court that the receivers of Camballin Farms are indispensable parties. If not present, our decree would not bind the receivers, thus running the risk of inconsistent obligations being imposed upon persons and property.[8]

■ The district judge held the facts which formed the basis of Crutcher's tort claim rendered it a compulsory counterclaim that Crutcher was required to raise in the earlier guarantee lawsuit with Aetna (first case) since the facts were known to him at that time. As a result, the district court dismissed the claim as barred under Rule 13(a). We agree. Failure to bring a compulsory tort counterclaim in an action on the contract will bar a later independent action on the tort. *Cleckner v. Republic Van and Storage Co.*, 556 F.2d 766 (5th Cir.1977). The district court also held that defendants A.E. Four and Holman had insufficient contacts in Texas for the Court to assert personal jurisdiction over them. The district court found no purposeful availment by A.E. Four or Holman of the protection of Texas laws under which personal jurisdiction could be sustained. We see no reason to disturb that ruling. The district judge also ruled that Crutcher had stated no claim for indemnity against Aetna because Aetna was a limited partner in Camballin Farms. In his reply brief, Crutcher now waives any appeal on this issue.

■ Finally, the district court rejected Crutcher's claim for declaratory relief on the basis of an inconsistent election of remedies by Aetna. The court ruled that Aetna could simultaneously pursue numerous remedies to a single satisfaction. Crutcher argues that because Aetna's claims against him were reduced to judgment (first case) he was forced to file for personal bankruptcy. He asserts that the doctrine of election of remedies precludes Aetna from proceeding now against the Australian land as collateral. This claim is meritless. As a mortgagee, Aetna is entitled to pursue concurrently the remedies under the loan guarantee and the mortgage to obtain sat-

---

7. Of course, a motion to dismiss under Rule 12 is the proper method of testing the legal sufficiency of the complaint. In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

8. As an example, if we granted the relief requested by Crutcher, rescinding and cancelling the receivership, Camballin Farms would be placed in the position of being declared free of the receivership by an American court and remaining subject to the receivership under Australian law. Besides presenting an international conflict between the courts of Australia and the United States, this would certainly place a cloud on the status of the receivership.

isfaction. Merely obtaining a judgment against another party—when such judgment remains uncollected—is not a satisfaction nor does it give rise to the bar of the election of remedies.

■ We also believe that plaintiff's contention that defendants have improperly pursued a double recovery—by proceeding against Crutcher as guarantor and against the collateral—is unfounded because the guarantee agreement signed by Crutcher provides that Aetna may proceed against Crutcher as guarantor and that simultaneous foreclosure procedures shall not be deemed an election of remedies. It is patent that parties are entitled to structure their private relations and remedies as they choose, within the boundaries of the law. Accordingly, Aetna enjoys the explicit right to proceed against both the guarantor and the collateral in the event of default on the loans. By way of summation, we uphold the district court's dismissal of Crutcher's claims against Aetna.

### III.

Rule 60(b) provides in part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and reasons for (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Considering now Crutcher's Rule 60(b) motion in the first case, the pertinent facts are that through his attorney, Crutcher appeared in the lawsuit and filed an answer to Aetna's complaint. In paragraph four the original answer raised the late funding defense [9] which—after new counsel entered the picture—is put forth to justify Crutcher's demand for Rule 60 relief against Aetna. Crutcher was served through his attorney and responded to requests for admissions and interrogatories. His attorney participated in a discovery conference. Crutcher's attorney was served with Aetna's motion for summary judgment and was present at the oral hearing on the motion prior to the entry of judgment.[10]

---

9. Paragraph Four of the Answer "admits that a loan was made to Camballin Farms on or about May 22, 1980 ... but would show that, as a direct result of delays in funding such loan, Camballin Farms and defendant suffered substantial losses and damage."

10. Crutcher was personally informed that judgment had been taken against him when his deposition was taken by Aetna in an attempt to satisfy its judgment. This deposition was held within a few weeks of the district court having granted judgment. It appears that this was well within the time for Crutcher to have appealed the judgment rather than pursuing relief under Rule 60(b). It is, of course, Crutcher's contention that he relied on his original counsel's statement that he had no good defense and so did not appeal. Subsection (6) of Rule 60(b) is not a basis for relief in this case. As we noted in *United States v. O'Neil*, 709 F.2d 361, 373 n. 12 (5th Cir.1983), "[t]he broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated, and deliberate choices he has made. A party remains under a duty to take legal steps to protect his interests. In particular, it ordinarily is not permissible to use this motion to remedy a failure to take an appeal." (*Quoting* 11 Wright & Miller, *Federal Practice and Procedure* § 2864 at 214–15) (footnotes omitted). Professor Moore is also in agreement. *See* 7 Moore's *Federal Practice* ¶ 60.27[1] at 348.

Then, after all this had transpired, new counsel entered the case and filed a Rule 60(b) motion to set aside the judgment. This was done almost eight months after Crutcher's new counsel filed suit against Aetna alleging the aforementioned counterclaims in the companion case in this appeal.[11]

The purpose of Rule 60(b) is to delineate the circumstances under which relief may be obtained from the operation of final judgments, whether they are entered by default, or otherwise. By its very nature the rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the "incessant command of the court's conscience that justice be done in the light of all the fact." *Bankers Mortgage Company v. United States*, 423 F.2d 73, 77 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970).

■ Motions under Rule 60(b) are directed to the sound discretion of the district court, and the district court's denial of relief will be set aside on appeal only for an abuse of discretion. *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir.1977).[12] It is not enough that the granting of relief might have been permissible, or even warranted—denial must have been so unwarranted as to constitute an abuse of discretion. *Id.*

In *United States v. Gould*, 301 F.2d 353, 355–56 (5th Cir.1962), *quoting* 7 Moore's *Federal Practice* ¶ 60.19, at 237–39, this Court delineated factors that should inform the district court's consideration of a motion under Rule 60(b): (1) final judgments should not be lightly disturbed; (2) a Rule 60(b) motion is not to be used as a substitute for appeal; (3) the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was filed within a reasonable time; (5) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the par-

ticular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether—if the judgment was rendered after a trial on the merits—the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. We have often observed that these factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments.

■ Crutcher raises essentially three arguments on appeal to grant his Rule 60(b) motion: (i) no opportunity to present his case on the merits, (ii) the ineptness of his prior counsel; and (iii) a huge judgment taken against him. He relies primarily on our opinion in *Seven Elves v. Eskenazi*, 635 F.2d 396, 403 (5th Cir.1981). This case, however, is not *Seven Elves*. Unlike *Seven Elves*, in our case there is no default judgment. Crutcher was represented by an attorney of his choice. While his present counsel ingeniously fashions an appellate argument that Mr. Crutcher was constructively abandoned by his original counsel—contending, in effect, that the representation Crutcher received was so lacking in legal merit as to come within the ambit of our cases allowing motions under Rule 60(b) to succeed—that characterization is belied by the record below. Crutcher's counsel filed an answer and appeared several times on behalf of his client. Mr. Crutcher voluntarily chose his original attorney. This voluntary choice is at the heart of our representative litigation process. Were it to be otherwise, endless delay would result as clients substituted counsel according to the whim and fancy of their pleasure in the results achieved. Our cases grant relief for attorney incompetence only where that incompetence deprives the party of an opportunity to

---

**11.** Judgment was taken in November of 1982. In January Crutcher's new counsel entered the case. In August the Rule 60 motion was filed.

**12.** *See also Wilson v. Thompson,* 638 F.2d 801 (5th Cir.1981).

present the merits of his case. Here Crutcher had such an opportunity, but failed to use it.

In most cases litigation is handled by lawyers. While in other spheres of life a person may not excuse his breaches of duty on the ground that the negligence was that of his agent—whatever his remedies against the agent—it is true that courts have shown sympathy for the plight of the diligent litigant with an incompetent or sloppy lawyer. When the question arises in the context of the original decision to impose a sanction, the court may, and frequently does, take into consideration the harshness of a dismissal or a default judgment as a penalty imposed upon a client for the acts and omissions of the lawyer; in many instances courts have chosen to impose penalties directly upon the lawyer rather than upon the client. After judgment, however, when the question arises in the context of a motion for a vacation of the judgment, the wording of Rule 60(b) puts the court in a dilemma. The question presented on a Rule 60(b) motion is whether the conduct is excusable neglect. Obviously the greater the negligence involved, or the more willful the conduct, the less "excusable" it is; on the other hand, the more inexcusable it is, the greater the natural sympathy the court has with the client. *See* 7 Moore's *Federal Practice* ¶ 60.27[2] at 283–85.

In *Link v. Wabash Railroad,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the Supreme Court made it plain, however, that the neglect of the attorney is to be treated as the neglect of the party. In *Link,* a personal injury action with a history of delays was dismissed for failure to prosecute after plaintiff's attorney failed to appear at a scheduled pretrial conference. Justice Harlan, writing for the majority, observed:

> There is certainly no merit in the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the ac-

tion, and he cannot avoid the consequences of the acts and omissions of this freely selected agent.

Unlike our case of *Seven Elves* where appellants did not appear either personally or through an attorney, here Crutcher was represented by counsel of his choice at several appearances throughout the course of the litigation. Rule 60(b) was not designed to operate as an insurance mechanism for clients. Its purpose is not to give relief to the client who does not choose the best lawyer for the job. Our cases liberally construing Rule 60(b) focus upon the abandonment of clients by their lawyers, not upon clients who lose. Thus, we have liberally construed Rule 60(b) when counsel's abandonment of a client causes a default judgment. Many times a default judgment has been set aside in favor of a hearing on the merits. Crutcher's case is not a default judgment; it is a summary judgment at a hearing attended by all counsel. As a result, the policy of favoring final judgments looms larger in the scheme of factors the court considers on a 60(b) motion than it does when a default judgment is at stake. As we emphasized in *United States v. O'Neil,* 709 F.2d 361, 373 (1983), "a party cannot have relief under Rule 60(b)(1) merely because he is unhappy with the judgment. Instead he must make some showing of why he was justified in failing to avoid mistake or inadvertence. Ignorance of the rule is not enough, nor is ignorance of the law." (Quoting Wright & Miller, *Federal Practice and Procedure* § 2858 at 170 (footnotes omitted).)

■ Similarly, Crutcher's contention that a Rule 60(b) motion is justified because of newly discovered evidence or mistake, must fail. Crutcher's present counsel raises the failure of the prior counsel to pursue the defense of late funding. While this does not appear to us to be a defense to the suit on the guarantee, but rather a counterclaim, the record reveals that this contention was in fact raised by Crutcher's original counsel in the answer he filed in re-

sponse to Aetna's suit.[13] That this defense was not later pursued by Crutcher's attorney is irrelevant. The essential factor is that the late funding defense was raised and waived by Crutcher. Also, as we have held, the district court quite properly rejected Crutcher's claim of late funding in Aetna's suit on the guarantee because the lateness in funding was due to Crutcher's failure to complete the conditions precedent to the closing of the loan—he did not unencumber the property, which was to serve as collateral for the loan. At oral argument Crutcher's counsel admitted that his client had not freed the collateral as contemplated by the loan agreement.

■ The same fate must befall Crutcher's newly discovered evidence contention. As new evidence Crutcher's present counsel brings forth a statement from an unnamed Aetna employee in Australia that Aetna would "break" Crutcher. At oral argument Crutcher's counsel admitted that this statement was not made at the time the loan was negotiated. At most this appears to be only a cumulative scintilla of evidence, not new evidence of a tortious conspiracy against Crutcher.

Additionally, the skillfully drafted affidavit of Crutcher that he "did not authorize his attorney to not oppose" the motion for summary judgment is capable of several interpretations. Of prime importance, however, is that this affidavit shows that Crutcher related the facts supporting the late funding defense to his original attorney. As a result, counsel's arguments as to new evidence and mistake must fail because of the very affidavit on which he asks us to rely in granting the Rule 60(b) motion.

The overriding consideration in our decision to sustain the district court's denial of Crutcher's Rule 60(b) motion is not that the late funding of the loan was because of Crutcher's tardiness in freeing the loan collateral of liens as clearly contemplated by the loan agreement; rather, it is because Crutcher did not sign as a guarantor of the loan until after the collateral was freed. The loan was approved in January. The collateral was freed in April. Crutcher signed in May and then the money was made available. Thus, Crutcher never became a guarantor until *after* the delay of which he now complains had occurred. Crutcher's acceptance of the loan proceeds by his guarantee—with knowledge of the delay and any attendant problems such a delay would cause on his Australian operations—eliminates any defense to the Aetna foreclosure suit.

Considering carefully the record below and our precedents we must conclude that the district court's denial of relief under Rule 60(b) was not an abuse of discretion. The absence of injustice is clear when the movant is unable to show both the existence of a defense of sufficient merit to indicate the possibility that the outcome would differ upon retrial, 10 Wright & Miller, *Federal Practice and Procedure* § 2697, at 528, and that he had no fair opportunity to present that defense in the proceeding below.

We do not believe Crutcher has shown in either case before us both the existence of a (i) sufficiently meritorious claim or defense and (ii) the absence of a fair opportunity to present that claim or defense below.

AFFIRMED.

---

13. The late funding defense was expressly raised in paragraph 4 of Crutcher's answer to Aetna's complaint filed in the guarantee suit.