**JACK GRAY TRANSPORT, INC., Plaintiff,**

v.

**Herbert L. SHAW, Defendant.**

**No. 84 C 1030.**

United States District Court, N.D. Illinois, E.D.

Nov. 29, 1984.

Anthony B. Bruno, Bruno & Orvino, Melrose Park, Ill., for plaintiff.

William M. Stevens, Rooks, Pitts & Poust, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On June 27, 1984 this Court entered a $23,437.05 default judgment under Fed.R. Civ.P. ("Rule") 55(b)(2) in favor of Jack Gray Transport, Inc. ("Gray") and against Herbert L. Shaw ("Shaw"). Over four months later Shaw moved under Rule 60(b) (via his "Motion") to vacate the judgment. For the reasons briefly stated in this memorandum opinion and order, the Motion must be denied.

### Facts

In November 1980 Gray agreed to lease a tractor from Shaw for use in Gray's cartage business. Under a supplement to the lease agreement (the "Supplement") Shaw agreed to provide both (1) workers' compensation insurance coverage for any Shaw employees loaned to Gray to operate the leased equipment and (2) public liability coverage. In addition, the Supplement provided for indemnification by Shaw and for insurance coverage of that contractual undertaking:

3. Lessor [Shaw] agrees to defend, protect, save and keep Lessee [Gray] forever harmless and indemnified against and from any loss, cost, damage or expense arising out of any accident or other occurrence causing injuries to or death of any person or persons, or any loss or damage to property including the cargo being transported.

It is the intent of the parties hereto that the above indemnity and agreement to hold Lessee harmless, shall not only be the full responsibility of Lessor, but Lessor shall be required to obtain the endorsement of an insurance company insuring said Lessee, and said endorsement shall include the aforementioned contract liability of Lessor....

Finally, the Supplement specified if Shaw were unable to provide the required insurance coverage or to obtain policy endorsements naming Gray as an additional insured, the rental rate would be reduced by 5%—of the gross revenues derived from Gray's use of the leased tractor—from 82% to 77%.

On May 19, 1981 Henry M. Haskell ("Haskell"), an employee of Shaw on loan to Gray, suffered an accidental injury arising out of and in the course of his employment. Haskell filed a claim with the Illinois Industrial Commission ("IIC"), seeking workers' compensation for his injury. On January 27, 1983 IIC issued its decision,[1] finding Haskell to be a "loaned employee" within the terms of Ill.Rev.Stat. ch. 48, ¶ 138.1(a)(4) ("Section 138.1(a)(4)") and holding Shaw and Gray jointly and severally liable for a $21,032.54 award to Haskell.

Gray's insurer paid Haskell's workers' compensation award and then (as Gray's subrogee) sought reimbursement from Shaw under the contractual indemnification provision[2] for the amount of the award plus expenses incurred in defending against Haskell's claim before the IIC. On February 1, 1984, after Shaw had failed to provide such indemnification, Gray filed its Complaint. Shaw was first served with the Complaint and a summons by certified mail on February 9, 1984. After Shaw failed to respond, Gray served him again, this time by personally serving Shaw's wife at the Shaw residence on March 21. Again Shaw failed to respond. On June 27 this Court granted Gray's motion for default and entered judgment against Shaw.

It does not appear Shaw received notice of the entry of the default judgment, but that was simply because no one had then

1. In part that decision referred to "Respondent Shaw, who failed to appear despite proper notice of said hearing." Shaw thus ignored the IIC proceedings in just the same way he later ignored most of the notices in this case.

2. Count I of Gray's Complaint (the "Complaint") purports to state a claim for reimbursement under Section 138.1(a)(4):

Where an employer operating under and subject to the provisions of this Act loans an employee to another such employer and such loaned employee sustains a compensable accidental injury in the employment of such borrowing employer and where such borrowing employer does not provide or pay the benefits or payments due such injured employee, such loaning employer is liable to provide or pay all benefits or payments due such employee under this Act and as to such employee the liability of such loaning and borrowing employers is joint and several, provided that such loaning employer is in the absence of agreement to the contrary entitled to receive from such borrowing employer full reimbursement for all sums paid or incurred pursuant to this paragraph together with reasonable attorneys' fees and expenses in any hearings before the Industrial Commission or in any action to secure such reimbursement. That language contemplates the usual situation in which the borrowing employer is primarily liable to the employee, while the loaning employer is secondarily liable. See *Chicago's Finest Workers Co. v. Industrial Commission,* 61 Ill.2d 340, 343–45, 335 N.E.2d 434, 436–37 (1975). In providing for the employers' joint and several liability, the statute simply relieves the employee of the risk of any inter-employer dispute as to liability. As for the final proviso, it allocates primary responsibility to the borrowing employer unless the employers otherwise contract. Shaw and Gray have done precisely the latter, having agreed to shift ultimate liability for workers' compensation claims to Shaw. Count I is thus based on Section 138.1(a)(4) only in the sense the statute permits such an agreement. Accordingly Count I is really no different in substance from Complaint Count II, which directly states a cause of action for contractual indemnification.

filed an appearance on his behalf. However on June 25 Shaw had been mailed a copy of the detailed *motion* for default judgment, but did nothing at all about it. Then on October 15 Shaw was served personally with a citation to discover assets, to be presented before this Court on November 6. That triggered Shaw's Motion.

### Rule 60(b) Relief

Rule 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ... The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Those general requirements that a Rule 60(b) motion shall be made "within a reasonable time" and granted "upon such terms as are just" have been interpreted by our Court of Appeals in *A.F. Dormeyer Co. v. M.J. Sales & Distributing Co.*, 461 F.2d 40, 43 (7th Cir.1972), quoting *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C.Cir.1966) (again quoted with approval in *Inryco, Inc. v. Metropolitan Engineering Co.*, 708 F.2d 1225, 1229–30 (7th Cir.1983)):

The philosophy of modern federal procedure favors trials on the merits, and default judgments should generally be set aside where the moving party acts with reasonable promptness, alleges a meritorious defense, and where the default has not been willful.

In addition the movant must demonstrate facts establishing one of the six reasons for relief set out in Rule 60(b). Only the first of those—mistake, inadvertence, surprise, or excusable neglect—is arguably relevant here.

Shaw explains his initial default in a way that fits into Rule 60(b)(1): On April 6, 1984 (some two weeks after his wife had been served personally with Gray's Complaint) he engaged Anthony B. Bruno, Esq. ("Bruno") to undertake the defense of this action.[3] Bruno prepared an answer and affirmative defenses to the Complaint, but because he was engaged with other matters during the months of April and May— two emergency matters in his capacity as a special assistant attorney general for the State of Illinois, and a trial in the District of Colorado—Bruno asked a secretary in his office to file the responsive pleadings. Unknown to Bruno she failed to do so, and she later quit his employment without notice, leaving various of his matters incomplete.

Those facts alone—credited for purposes of this opinion—would likely make out a case of excusable neglect. While unjustified neglect on the part of Shaw or his attorney is not sufficient to justify vacating a default judgment, *Ben Sager Chemicals International, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir.1977), it is plausible to hold Bruno made a reasonable effort to file a timely answer. That conclusion would also implicate excusing Bruno's inattentiveness because of his preoccupation with other immediately pressing matters. See *United States v. MacDonald*, 86 F.R.D. 204, 207 (N.D.Ill.1980).

But that is *not* the whole story, for Shaw's non-filing of an answer was not his only delinquency. After Shaw had failed to file a timely response to the March 21 personal service, Gray's counsel prepared his proposed motion for default judgment, detailing all aspects of Gray's claim, Gray's efforts at service and Shaw's ensuing silence. After reciting the facts as to both the mailed and the personal service of the summons and complaint, Gray's motion said:

Defendant has not answered or otherwise responded to the Summonses and Complaint, and is presently in default.

Gray's lawyer mailed a copy of the motion to Shaw at his home address June 25, and the matter came up for hearing before this Court June 27.

---

**3.** That task had previously been tendered to other counsel.

■ While Shaw's failure to appear June 27 may perhaps reflect he did not receive notice in time to do so,[4] the notice of motion specifically made him aware he was in default. Nonetheless he did not even inquire of, or consult with, Bruno. Instead he did nothing. And because neither Shaw nor Bruno had entered an appearance, they of course received no notice *after* entry of the default judgment. Only service of the citation to discover assets (nearly four months later) finally stimulated a response from Shaw.

■ While it is true "[t]he philosophy of modern federal procedure favors trials on the merits," *Dormeyer*, 461 F.2d at 43, that end is as much served by the procedural rules governing the progress of a lawsuit as by a liberal application of Rule 60(b). Shaw offers no word of explanation of his second and independent delinquency in the face of his having received an unequivocal notification of his original (and, it may be assumed, previously unknown) default. Under the circumstances, Shaw cannot be said to have borne his burden of showing "excusable neglect" as to the more than four-month period between June 27 and November 6, 1984, when Shaw's Motion was filed.

■ That unexcused lapse must be viewed as Shaw's failure to satisfy the requirement that the movant act with reasonable promptness in moving to vacate a default judgment. Rule 60(b)'s outside limit of one year from the date of judgment is not a license to stand by and let the clock run.[5] Both the specific language of the Rule and its sentence structure compel the conclusion Shaw had a separate, free-standing obligation to file a motion to vacate within a "reasonable time" after the judgment. As *Planet Corp. v. Sullivan*, 702 F.2d 123, 126 (7th Cir.1983) teaches:

> Under certain circumstances, it could well be "unreasonable" to file a motion to vacate well within one year of judgment. "What constitutes 'reasonable time' depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir.1981) (30 days held unreasonable when movant offered no explanation for his failure to challenge the ruling in question on direct appeal). "Although the fact that a motion was made barely within the one-year time limit gives the court the *power* to entertain it, as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable.'" *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 656 (2d Cir.1979) (emphasis in original).

Shaw has unquestionably failed the threshold test under Rule 60(b)(1).

In the interest of completeness, it is worth looking at the Rule's other two criteria (even though this is an area of law in which the *first* rather than the third strike is "out"). Shaw appears to have satisfied one, but not both, of the other conditions of Rule 60(b) relief as quoted in *Dormeyer*.

■ First, there is nothing to indicate Shaw's first default was willful. But the *second* one—his total inattention to the notice of application for default judgment after it was mailed to him—has to be viewed as willful in the most meaningful sense of

4. This District Court's General Rule 12(a) requires a movant to serve the opposing party with seven days' advance notice (if notice is given by mail) of any motion. But because Shaw was already in default and had not appeared, Gray had no obligation to give him any notice at all. General Rule 12(a) is inapplicable by its terms where the Federal Rules of Civil Procedure provide otherwise, and Rule 55(b)(2) requires service of notice of an application for default judgment only where the defendant has appeared in the action. Hence the mailing to Shaw by Gray's lawyer was wholly gratuitous and cannot be challenged by Shaw as inadequate (and Shaw has not sought to do so).

5. That one-year provision is not the equivalent of a statute of limitations, which shelters any timely filing.

the word. Any defendant guilty of sticking his head in the sand, as did Shaw, must be charged with the kind of deliberate inattention that justifies a "willfulness" label. Even if that were not so, Shaw's conduct was surely the kind of unexplained and unjustifiable carelessness that *Ben Sager Chemicals* and like cases say does not warrant Rule 60(b)(1) relief.

As for the final criterion, Shaw does appear to have a facially meritorious defense. Under the prevailing standard, Shaw need not show likelihood of success, *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C.Cir.1980) but only the existence of a defense good at law, *United Coin Meter Co. v. Seaboard Coastline Railroad*, 705 F.2d 839, 845 (6th Cir.1983). Indeed, in certain extraordinary circumstances (not present here) the existence of a colorable defense may itself be sufficient to warrant granting a Rule 60(b) motion. *United States v. $48,595*, 705 F.2d 909, 915 (7th Cir.1983).

Before Haskell's injury, Shaw asserts, the parties orally agreed to modify the lease agreement so that Gray would supply workers' compensation insurance coverage on loaned employees. Accordingly Shaw received only 77% rather than 82% of Gray's gross receipts on the leased vehicle. Conversely, Gray claims its right to recovery is based upon the earlier-quoted indemnification clause of the Supplement, which is said to be wholly independent from the terms requiring Shaw to obtain insurance coverage and endorsements for Gray's benefit. At issue is the meaning of the following language from the Supplement:

> It is the intent of the parties hereto that the Lessor provide the insurance as described above. If the Lessor is not able to provide the insurance coverage so described, including the naming of Jack Gray Transport, Inc. as an additional insured effective the same day as the execution of this instrument, then and in that event payment to the Lessor under agreement 3 shall be reduced by 5%.

That provision may arguably be read two ways in terms of risk-shifting (it will be remembered Haskell was paid by Gray's insurer, which seeks reimbursement here as Gray's subrogee). That arguable ambiguity (which this opinion need not resolve) qualifies Shaw's defense as "meritorious" in the Rule 60(b) sense.

But a potentially meritorious defense is insufficient to enable this Court, in the sound exercise of its discretion under Rule 60(b) (see *Planet Corp.*, 702 F.2d at 125), to vacate the default judgment against Shaw. As already stated, Shaw has failed utterly to satisfy his key burden to show prompt action and excusable neglect. Indeed he has made no effort to account for his total inaction during the period between June 27 and November 6, and no effort to account for Bruno's continuing inattention to this lawsuit even after his preoccupation with other pressing matters ended in late May. In brief, Shaw has not made out a case for relief from the default judgment entered by this Court June 27, 1984.[6]

### Conclusion

Shaw's Motion is denied. Gray's judgment remains intact.

---

**6.** It bears mention that relief from a default judgment under Rule 60(b) is more exceptional than relief from an entry of default under Rule 55(c). As *Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 187 (7th Cir.1982) put it (emphasis in original):

The elements for relief from default judgment are basically the same as the elements for setting aside an entry of default, although the tests are more stringently applied in the case of a default *judgment*.