**In re NICK JULIAN MOTORS, a/k/a Nick Julian, and Leonidas Nixon Julian, Debtor.**

**FDIC as Receiver for Iredell State Bank, Plaintiff,**

v.

**NICK JULIAN MOTORS, Defendant.**

**Bankruptcy No. 391–31820 RSM–11. Adv. No. 391–3599.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Nov. 24, 1992.

Michael L. Hood, Dallas, TX, Roger Fuller, F.D.I.C., Dallas, TX, for Debtor.

## MEMORANDUM OPINION WITH RESPECT TO DEFENDANT'S 60(b)(6) MOTION

ROBERT C. McGUIRE, Chief Judge.

Following are the Court's Findings of Fact and Conclusions of Law, pursuant to Bankruptcy Rule 7052, with respect to the F.R.C.P. 60(b)(6) (Bankruptcy Rule 9024) motion of debtor Nick Julian Motors, a/k/a Nick Julian and Leonidas Nixon Julian ("Defendant" or "Debtor") to set aside the judgment of FDIC as Receiver for Iredell State Bank ("Plaintiff" or "FDIC"). The motion is denied because it was not filed within a reasonable time. In *Crutcher v. Aetna Life Ins. Co.*, 746 F.2d 1076, 1082 (5th Cir.1984), the Fifth Circuit discussed the factors the court should consider on a Rule 60(b) motion.

In *United States v. Gould*, 301 F.2d 353, 355–56 (5th Cir.1962), *quoting* 7 Moore's *Federal Practice* ¶ 60.19, at 237–39, this Court delineated factors that should inform the district court's consideration of a motion under Rule 60(b): (1) final judgments should not be lightly disturbed; (2) a Rule 60(b) motion is not to be used as a substitute for appeal; (3) the rule should be liberally construed in order to achieve substantial justice; (4)

whether the motion was filed within a reasonable time; (5) whether—if the judgment was a default or a dismissal in which there was no consideration of the merits—the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether—if the judgment was rendered after a trial on the merits—the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. We have often observed that these factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments.

On March 5, 1991, Debtor filed for relief under 11 U.S.C. Chapter 11.

At all times material hereto, Defendant has operated a used car dealership known as Nick Julian Motors. On or about January 12, 1987, Defendant entered into a written financing agreement at Iredell State Bank (the "Bank"), under which the Bank provided Defendant with an operating line of credit. A similar financing agreement was entered on May 15, 1989 (collectively, the "Financing Agreements"). FDIC has taken over the Bank's position.

Defendant would obtain a retail installment note from the car purchaser. The Debtor was responsible for servicing the retail installment notes.

The January 12, 1987 and May 15, 1989 Financing Agreements both provided that the Bank would purchase retail installment notes issued to Defendant's retail customers under the Financing Agreements. The Bank agreed to purchase the retail installment notes, with recourse to Defendant, at 4% over the Bank's prime rate.

On or about September 11, 1991, FDIC filed Adversary Proceeding Nos. 391–3598 and 391–3599 (the "Adversary Proceedings").

## The Judgment

By Judgment entered January 6, 1992, FDIC obtained a $92,030.66 judgment styled "Default Judgment Granting Complaint Objecting to Dischargeability of Debt Under 11 U.S.C. § 523". After some initial skirmishes over a tardily-filed answer and an FDIC F.R.C.P. 55 motion for default, Defendant filed an answer through an attorney, but failed to appear in person or by an attorney at a duly-scheduled January 6, 1992 trial. FDIC, through a witness, proved up a case allegedly for embezzlement under § 523(a)(4). Neither side brought forth the record of such default trial and the Court accepted the unchallenged open court representations of FDIC's counsel on October 23, 1992, as to what occurred in substance on January 6, 1992.

## Meritorious Defense

Defendant contends that he has a valid defense to the Adversary Proceedings, that his counsel was aware of such defense, and nevertheless, failed to appear or represent him at the trial on January 6, 1992. The Court finds Debtor's counsel was aware of his alleged defense and assured him that his defense would be brought to the Court's attention, and nevertheless, such attorney did not appear for the trial or require his client to attend the trial. This was gross negligence and gross neglect on the attorney's part.

Without ultimately deciding the resolution of the underlying merits, the Court finds there was some facial merit in Defendant's defense. In *Jack Gray Transport, Inc. v. Shaw*, 105 F.R.D. 485, 489 (N.D.Ill.E.D.1984), the court points out that the Defendant does not have to show the likelihood of success, but only the existence of a defense good at law. *Matter of Levy*, 75 B.R. 894, 896 (Bankr.S.D.Ohio 1987). *Also see, Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir.1981), where the court talks in terms of "a defense of sufficient merit to indicate the possibility that the outcome would differ upon retrial...." Citing the case of *Federal Sav. & Loan Ins. v. Two Rivers Asso-*

*ciates,* 880 F.2d 1267 (11th Cir.1989), FDIC takes the position that the *D'Oench, Duhme* doctrine prevents Defendant from asserting any defense under Defendant's Exhibit ("Ex.") A from the October 23, 1992 hearing because, in effect, such exhibit would not, on its face, permit Defendant to recover for Defendant's share of earned interest. The agreement provides that Defendant's earned interest is transferred into the dealer reserve account. Under Paragraph III, subparagraph one, it appears that there may be a maximum reserve account of $50,000, thereby apparently indicating that, once such amount was established, Defendant was entitled to his earned interest, if any, in excess of such amount.

Further, and aside from any such contention, there was some testimony that Defendant had entered into a post bank takeover agreement with FDIC whereby Defendant was permitted to collect the customer obligations in question, presumably under some fee arrangement or ratification of Ex. A. The Defendant showed the existence of a defense of sufficient merit to indicate the possibility the outcome would be different upon a retrial. *Seven Elves, Inc. v. Eskenazi, supra.*

■ It was appropriate that FDIC did not testify at the F.R.C.P. 60(b) hearing to refute such contentions since resolution of the underlying merits is not necessary or appropriate at a 60(b) hearing.

### Intervening Rights

There was no showing by FDIC that there were any intervening rights that would be prejudiced by the granting of the motion; no great delay is likely to occur. The amount of money involved is very great. *Seven Elves, Inc. v. Eskenazi, supra.* There was no showing by either side as to whether any malpractice action against Defendant's prior attorney would be adequate to restore Defendant to his prejudgment position. *Id.* at 403.

### Debtor's Awareness of Judgment

■ Defendant has been aware of the default judgment since January 1992. His prior attorney told him not to worry about the default judgment. Defendant's reliance on such advice was negligent. FDIC served both Defendant and his counsel with all pleadings and notices of proceedings. The default judgment was served on Defendant and his counsel on January 7, 1992. FDIC served Defendant's present counsel with a copy of the judgment on February 12, 1992. *See,* Ex. B to the FDIC response.

Defendant contends by his set aside motion, filed August 31, 1992, that the judgment should be set aside because, until recently, he was unable to locate an attorney to contest the judgment.

### Negligence of Counsel as Possibly Attributable to Movant

FDIC contends that Defendant's initial counsel's negligence is attributable to him, citing *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962), for the proposition that:

> There is certainly no merit to the contention that dismissal of [a party's] claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.

Despite the decision in *Link,* some cases have adhered to the view that counsel neglect or error, especially gross counsel neglect or error, while unavoidable as "excusable" neglect under Rule 60(b)(1), may come within the "any other reason" language of Rule 60(b)(6). 7 *Moore's Federal Practice* ¶ 60.27[2] at 60–286. In response to *Link,* Defendant cites *Seven Elves v. Eskenazi, supra,* for the availability of counsel error as justification for a Rule 60(b) motion. In *Crutcher v. Aetna Life Ins. Co., supra,* 746 F.2d 1076, the Fifth Circuit discussed its *Seven Elves* decision and the Supreme Court *Link* decision. In distinguishing *Seven Elves, Inc.* from the *Crutcher* case under consideration, the court pointed out in *Crutcher, supra* at 1082–1083 that: "Unlike *Seven Elves,* in our case there is no default judgment.... Our cases grant relief for attorney incompetence only where that incompetence deprives the party of an opportunity to pres-

ent the merits of his case." In this case, Defendant's attorney's gross negligence and gross neglect deprived him of the opportunity to present his defense.

### The 60(b)(6) Motion Was Not Filed Within a Reasonable Time

■ Defendant was aware of the judgment on or about January 7, 1992, but waited until August 31, 1992, approximately seven months and three weeks later, to file the Rule 60(b) motion. Defendant had a relationship with his present counsel in February 1992. On October 23, 1992, Defendant's present counsel explained, in statements to the Court, the delay as being occasioned by the complexity of Defendant's business affairs and the difficulty in getting a handle on the merits of the defense. In the *Seven Elves, Inc.* case, *supra*, the court pointed out that:

> Nor can it be suggested that the motion, which was filed within one year of the entry of judgment and *twelve days after the appellants' discovery* of the existence of the judgment, was not brought within a 'reasonable time' as that term is used in Rule 60(b).

(Emphasis supplied).[1] In *Planet Corp. v. Sullivan*, 702 F.2d 123, 126 (7th Cir.1983), the court states:

> Under certain circumstances, it could well be

> 'unreasonable' to file a motion to vacate well within one year of judgment. 'What constitutes "reasonable time" depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability to learn earlier of the grounds relied upon, and prejudice to other parties.' *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (30 days held unreasonable when movant offered no explanation for his failure to challenge the ruling in question on direct appeal). 'Although the fact that a motion was made barely within the one-year time limit gives the court the *power* to entertain it, as the delay in

making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was "reasonable".' *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648, 656 (2d Cir.1979) (emphasis in original). In a case that has certain similarities to the case at bar, *Collex, Inc. v. Walsh*, 74 F.R.D. 443 (E.D.Pa. 1977), pro se appellant filed his first Rule 60(b) motion to vacate within one month of the default judgment, and the second some four months later. Only in the second motion did appellant raise the lack of 55(b)(2) notice. In denying Rule 60(b) relief on the second motion, the court found that there was no excuse for the four month delay in filing the second motion, that appellant had failed to appeal the denial of his first motion to vacate, and that he could and should have raised his 'new' evidence in the initial motion. *Id.* at 449. Similarly, in *Mayfair Extension, Inc. v. Magee*, 241 F.2d 453 (D.C.Cir.1957) a delay of 11½ months in alleging fraud was held unreasonable when appellant had known of the default for almost a year. *See also Dominguez v. United States*, 583 F.2d 615 (2d Cir.1978), *cert. denied* 439 U.S. 1117, 99 S.Ct. 1023, 59 L.Ed.2d 76 (1979) (10–month delay occasioned by counsel's 'abysmal neglect' was unreasonable and Rule 60(b) relief would not be granted); *Di Vito v. Fidelity and Deposit Company of Maryland, supra*, [361 F.2d 936] at 939 [ (7th Cir.1966) ], ('Defendant has offered no convincing explanation of its four and one-half month delay, after discovery of what it now asserts to be significant evidence of fraud, before filing its [60(b)(3) ] motion').

*See also Jack Gray Transport, Inc., supra*, where the court held a delay from June 27 to November 6 unreasonable. Likewise, in *Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. 535, 539 (S.D.N.Y.1985), the court found a delay from June 1984

---

1. Rule 60(b) has a one-year provision on grounds (1), (2), and (3), but not on ground (6). However, even the one-year provision is not the equivalent of a statute of limitations which shelters any timely filing. *Planet Corp. v. Sullivan, supra*.

until October 30, 1984 unreasonable. At pp. 539–540, the court stated:

... All doubts are to be resolved in favor of the party seeking relief from judgment to facilitate resolution of disputes on their merits. *Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir.1980). However, 'when the adversary process has been halted because of an essentially unresponsive party,' default judgment is appropriate to protect the non-defaulting party from 'interminable delay and continued uncertainty as to his rights.' *Id.* (*quoting H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970) (per curiam)).

Under the facts and circumstances of this case, the 60(b)(6) motion was not filed within a reasonable time.

## ORDER DENYING MOTION TO SET ASIDE JUDGMENT

On October 23, 1992, came on to be heard the Motion of Nick Julian to set aside judgment, and, for the reasons stated in the Memorandum Opinion signed this date, the Court orders as follows:

It is, therefore, ORDERED that the Motion of Nick Julian to set aside judgment is DENIED.